Ellis UDALL, State of Oklahoma ex rel. State Treasurer, and Executive Director of the Oklahoma Public Retirement System, Appellants,

v.

Lynn P. UDALL, Appellee.

No. 52618.

Supreme Court of Oklahoma.

June 24, 1980.

Jan Eric Cartwright, Atty. Gen. of Oklahoma and Stephen F. Shanbour, Asst. Atty. Gen., for appellants.

David M. Jordan, Moore, for appellee.

HODGES, Justice.

The sole question on appeal is whether the accumulated funds of a member of the Oklahoma Public Employees Retirement System can be executed upon to satisfy a non-delinquent alimony judgment when 74 O.S.1971 § 923[1] exempts retirement benefits from execution, garnishment, or attachment or any other process or claim.

Ellis Udall and Lynn P. Udall [wife-appellee] were married in June, 1976. He left her on August 27, 1977, and his whereabouts are still unknown. On August 30, 1977, Lynn Udall petitioned for divorce. During the Udall's marriage, the wife contributed over Eight Thousand Dollars from her own funds to reduce her husband's indebtedness.

Ellis Udall was employed by state agencies for approximately sixteen years. During the course of his employment, Udall contributed to the Oklahoma Employees Retirement System. Combining the contributions made by Udall and his employers, a total of $2,017.02 was paid into the fund. Ellis Udall has not exercised his option pur-

---

1. It is provided by 74 O.S.1971 § 923:

"No alteration, amendment, or repeal of this act shall affect the then existing rights of members and beneficiaries, but shall be effective only as to rights which would otherwise accrue hereunder as a result of services rendered by an employee after such alteration, amendment, or repeal. Any annuity, benefits, fund, property, or rights created by or accruing to any person under the provisions of this act are hereby made and declared exempt from any tax of the State of Oklahoma or any political subdivision or taxing body thereof, and shall not be subject to execution, garnishment or attachment, or any other process or claim whatsoever, and shall be unassignable, except as specifically provided by this act."

suant to 74 O.S.1971 § 917 to withdraw these funds on the termination of his employment.

The District Court of Oklahoma County entered an order for the payment of support money. The court further ordered that the monies held by the Public Employees Retirement Fund be paid to Lynn Udall. The State Treasurer and the Executive Director of the Oklahoma Public Employees Retirement System appeared and asserted that pursuant to 74 O.S.1971 § 923, the vested retirement benefit rights of Ellis Udall were not subject to execution, garnishment or attachment. The court, in reliance on 12 O.S.1971 § 1276, ordered payment of the funds.[2] Execution of the final order was stayed pursuant to 12 O.S.1971. § 974 pending this appeal.

The appellants contend that the court indulged in weighing the relative merits of legislation, rather than applying the statute as it was clearly written, when it attempted to engraft an exception to the statute where none existed. The wife argues that the pension fund was established to enable employees to accumulate deferred income for themselves[3] and their dependents and pursuant to 12 O.S.1971 § 1276,[4] the trial court had absolute authority to order execution on the retirement fund. The wife insists that 74 O.S.1971 § 923 is limited by its language to cases pertaining to the collection of taxes or to protect a person who has actually exercised his/her statutory options relating to any monies held for his/her benefit by the Public Employees Retirement Fund.

**I**

Although this is a case of first impression in this jurisdiction, the question has been considered in several other states.[5] The majority view is even where the exemption provision contained in pension statutes is absolute on its face, the exemption is inapplicable to a claim for alimony or child support. The rationale for the majority position is that the purpose and policy of the exemption laws is to secure to an unfortunate debtor the means to support himself and his family; and to keep them from being reduced to absolute destitution, thereby becoming public charges. Under this theory, accumulated funds due and owing from a State Public Employee Retirement System to a member may be reached to satisfy alimony or child support payments as a matter of public policy.

The minority view is to the contrary. Courts advocating the minority view have held that as a matter of statutory construction: 1) Courts are not authorized in the construction of a statute to create exemptions not specifically made; 2) In construing a statute the court must ascertain what is contained therein, but may not insert what has been omitted, or omit what has been inserted; and 3) Where there is no ambiguity in the language used in the statute, the power to construe does not exist.

Kansas and California each have exemption statutes similar to, Oklahoma. Kansas adopted the so-called majority view in *Mahone v. Mahone, 213 Kan. 346, 517 P.2d 131 (1973)*; California opted for the minority

---

**2.** The court found in pertinent part:
"Title 12 O.S. Section 1276 granted the court power, jurisdiction, and authority to disburse the assets within the State of Oklahoma of *any* defendant to a divorce action subsequent to the filing by plaintiff of the Petition for Divorce."

**3.** See 74 O.S.1971 § 901.
Upon the death of the contributing employee, the spouse is entitled to monies in the fund pursuant to 74 O.S.1971 § 901.

**4.** It is provided by 12 O.S.Supp.1976 § 1276 in pertinent part:
"After a petition has been filed in an action for divorce and alimony, or for alimony alone, the court, or a judge thereof in vacation, may

make and enforce by attachment such order to restrain the disposition of the property of the parties or of either of them, and for the use, management, and control thereof, or for the control of the children and support of the wife or husband during the pendency of the action, as may be right and proper . . . ."

**5.** See *Mahone v. Mahone, 213 Kan. 346, 517 P.2d 131, 134 (1973)* for cases citing the majority and minority view; and Annot., "Pension Of Husband As Resource Which Court May Consider In Determining Amount Of Alimony," 22 A.L.R.2d 1421 (1952).

rule in *Ogle v. Heim,* 69 Cal.Rptr. 579, 442 P.2d 659 (1968) and *Ex parte Smallbone,* 16 Cal.2d 532, 534, 106 P.2d 873, 875 (1940). We are persuaded by the reasoning of the California Supreme Court, and by the dissent by Justice Fromme in *Mahone.*

This reasoning is in accord with our decisions in *Holeman v. Holeman,* 459 P.2d 611, 614 (Okl.1969); *Baker v. Baker,* 546 P.2d 1325, 1326 (Okl.1976); and *Umber v. Umber,* 591 P.2d 299, 302 (Okl.1979). This Court in *Holeman* determined that if a retirement fund is divided at the time of the divorce as jointly owned property, this would, in effect, destroy the husband's future livelihood and means of complying with an alimony or support award. In *Baker,* we held that a husband's military pension could not be treated as property acquired during coverture subject to division between the parties, although it could be considered in determining the amount of alimony for support. In *Umber,* we recognized that social security benefits were the separate property of the husband which could not be evaluated in determination of property settlement.

The California cases also noted pension administrators have a substantial and abiding interest in maintaining the integrity of retirement funds to assure security against profligacy and misfortune. Exemptions are not the only armor designed to protect the funds. To protect the employers' and participants' interests, the pension rights are made unassignable [except as specifically provided] to restrict voluntary and involuntary alienation and to operate as a defense against creditors. The California Court held in *Ogle* and *Smallbone* that there was no exception in the exemption laws which would authorize the satisfaction of an alimony judgment from the exempt pension fund, and that it was not within the prov-

ince of the courts to read an exception into the law where none existed. It determined that, although a spouse cannot be forced to satisfy his support obligation from exempt pension monies, a recalcitrant spouse can be held in contempt where these funds evidence an ability to pay.

## II

■ In ascertaining legislative intent, the language of the entire Act should be construed with a reasonable and sensible construction.[6] The subject expressed in the title of the Act limits the scope of the Act.[7] The title of the Act creating the Oklahoma Public Retirement System states that it is an act which among other things exempts "benefits received thereunder from taxation, execution, garnishment, attachment, process, or claims."[8] The cardinal rule for construction of a statute is to ascertain the intention of the Legislature by consideration of the statutory language. Exceptions should not be read into a statute which are not made by the legislative body.[9]

■ Although we sympathize with a person whose spouse deserts her/him after squandering one's assets, equitable considerations do not come into play on a subject governed by a valid statute.[10] Where the language of a statute is clear and it is within constitutional limitations, it may not be amended by judicial interpretation to include extraneous matters not within the contemplation of the Legislature in the enactment.[11]

REVERSED.

LAVENDER, C. J., and WILLIAMS, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

IRWIN, V. C. J., dissents.

6. *Personal Loan & Finance Co. of Capitol Hill v. Oklahoma Tax Commission,* 437 P.2d 1015 (Okl.1968).

7. *Oklahoma City v. Prieto,* 482 P.2d 919 (Okl.1971).

8. See Okla. Session Laws, Ch. 50 (1963).

9. *Seventeen Hundred Peoria, Inc. v. City of Tulsa,* 422 P.2d 840 (Okl.1966).

10. *Parks v. Lyons,* 183 Okl. 529, 83 P.2d 573, 577 (1938).

11. *Salaney v. Ferris,* 201 Okl. 236, 204 P.2d 270 (1949).