Greg BIGGS, Appellee,

v.

SURREY BROADCASTING COMPANY, an Oklahoma corporation, and Sun Broadcasting Company, an Oklahoma corporation d/b/a KATT Radio Station, Appellants.

No. 71678.

Court of Appeals of Oklahoma, Division 2.

May 7, 1991.

Ronald L. Elrod, Oklahoma City, for appellee.

Patrick M. Ryan, Joe M. Hampton, Ryan, Corbyn & Geister, Oklahoma City, for appellants.

BRIGHTMIRE, Judge.

Naked aggression. That's what underlies this legal conflict which has generated

two seminal issues for judicial review: (1) Whether an employee who is terminated for cause is entitled to accrued vacation pay; and (2) Whether an employer is entitled to seek indemnity for consequential losses resulting from an employee's unlawful acts of sexual harassment and discrimination.

The trial court answered the first issue in the affirmative and the second in the negative.

We affirm the first holding and reverse the second one.

## I

The background facts are these. The plaintiff, Greg Biggs, and one Susan Kelly worked for the defendant, Surrey Broadcasting Company, which operated radio station KATT–FM in Oklahoma City, Oklahoma. The plaintiff was employed as an account executive and Kelly as an advertising salesman. Three years after Kelly began working for KATT, she was fired. She filed a lawsuit in federal court against Surrey and its subsidiary, Sun Broadcasting Company, seeking damages for violation of her federal civil rights which she described as being a wrongful discharge in retaliation for resisting "numerous incidents of sexual harassment and discrimination."

Discovery undertaken in that lawsuit brought forth the following testimony from Biggs. He rose from advertising salesman to sales manager in July 1982 making about $70,000 a year—a position he held until he was fired December 15, 1985, due to the Kelly lawsuit and his "fraternization with one of the employees in the office." Biggs further testified that he hired Kelly after his 1982 promotion and discharged her in 1985. During her tenure, the KATT sales staff made an "R & R" trip to Dallas as a reward for doing a good job. Consonant with his trial testimony regarding an incident at the hotel where the group was staying, was this colloquy in Biggs' deposition:

"Okay.... I believe, that there was a—an incident at the hotel late one night or early one morning that involved you and Miss Kelly; am I right?" asked the lawyer.

"Yes," said Biggs.

"Okay. Would you tell me basically what that incident involved?"

"Essentially," said Biggs, "Susan saw me in the hall of the hotel and I was naked."

"Were you intoxicated at the time?"

"Probably."

. . . .

"You were naked?"

"Right, right. I think I was holding a pillow," added Biggs.

. . . .

"Okay. Do you recall what happened when Miss Kelly saw you in the hallway?" the witness was asked.

"Yes, I think she turned as white as a sheet and said, 'Greg,' rather loud and I think turned around and went into her room.... I stood there and looked at her and then when she went in, then I turned around and went where I belonged."

Biggs also related another on-the-job incident in which he and Kelly "had a heated conversation ... that got me a little hotter than normal, and I grabbed her arm." At still another time Biggs quotes himself as having said, " 'Susan, when you smoke, you look like a slut,' or words to that effect."

These admissions, among others, coupled with even more damaging testimony of Kelly, are said to have prompted Surrey to settle her lawsuit for $65,000 rather than risk a higher verdict at the hands of a jury.

With this lawsuit out of the way, Biggs decided to file the instant action seeking severance and accrued sick and vacation leave pay. The defendants not only denied Biggs' claim but filed a counterclaim seeking indemnification for damages they sustained as a result of the Kelly lawsuit.

A non-jury trial was held May 31, 1988. At the close of the evidence the court found that Biggs' job-related behavior constituted "gross misconduct," rejected his claim for accrued sick leave and severance

pay, granted his claim for accrued vacation pay in the amount of $1,500, and denied the defendants' counterclaim for indemnification.

Surrey appeals.

## II

Surrey's first complaint is that the court erred in awarding judgment to Biggs for vacation pay.

■■■ The argument is that as a prerequisite to finding that Biggs was entitled to recover accumulated vacation pay, either an agreement or established policy must exist which provides for such pay in the event of an involuntary termination of an employee. We do not agree.

The critical fact is not whether the termination was voluntary or involuntary but whether Surrey had an established policy granting its employees a paid vacation and severance pay. For in the presence of such a policy the provisions of our state wage law became part of the employment contract,[1] and it defines "wages" payable to a terminated employee as including vacation pay. Here Surrey had such a paid vacation policy and therefore accrued vacation pay was part of the "wages" payable upon the employee's termination.[2]

Surrey appears to recognize this but expresses the notion that its vacation leave policy limits full payment of unused vacation leave to situations where the employee gives two weeks' notice of termination, and that here, it is undisputed that Biggs did not give the required two-week notice. This contention is meritless not only because it is contrary to law but it is a non

sequitur—the latter because, given the manner of Biggs' discharge, it was not possible for him to give a two-week notice. And with respect to the law, there is no "involuntary termination" exception in § 165.3 and we are not at liberty to read one into it. *Udall v. Udall*, 613 P.2d 742 (Okl.1980).

We hold, therefore, that Biggs is entitled to recover his statutorily defined wages upon termination of his employment, which, as we have seen, includes pay for accrued vacation time.

## III

Next we consider Surrey's attack on the trial court's denial of its counterclaim.

In its supporting argument, Surrey correctly points out that one cannot tell from reading the record whether the trial judge concluded that the law failed to grant a right of indemnification to a vicariously liable employer against the malfeasant employee, or whether he resolved against Surrey what he perceived to be certain controlling disputed issues of fact.

■■ As far as the law is concerned it appears to be settled in this state that an implied contract of indemnity may arise between one who is constructively or vicariously liable for a tort and the wrongdoer, regardless of whether liability is imposed by statute or by a rule of the common law, and irrespective of the existence of an express contract to indemnify. *Porter v. Norton–Stuart Pontiac–Cadillac*, 405 P.2d 109 (Okl.1965).

---

1. *Buckles v. Wil–Mc Oil Corp.*, 585 P.2d 1360 (Okl.1978).

2. Wages are defined in 40 O.S.Supp.1990 § 165.1(4), as:

   "'Wages' means compensation owed by an employer to an employee for labor or services rendered, including salaries, commissions, holiday and vacation pay, overtime pay, severance or dismissal pay, bonuses and other similar advantages agreed upon between the employer and the employee, which are earned and due, or provided by the employer to his employees in an established policy, whether the amount is determined on a time, task, piece, commission or other basis of calculation."

   Title 40 O.S.Supp.1990 § 165.3, states in relevant part that:

   "A. Whenever an employee's employment terminates, the employer shall pay the employee's wages in full, less offsets, at the next regular designated payday established for the pay period in which the work was performed either through the regular pay channels or by certified mail postmarked within the deadlines herein specified if requested by the employee, unless provided otherwise by a collective bargaining agreement that covers the employee."

The next question is, then, whether the evidence depicts Surrey as a faultless victim of Biggs' antics or as an implicated malfeasant.

■ We can find nothing in the record which would justify a finding that Surrey was affirmatively involved in, or contributed to, the acts complained of by Kelly. It is undisputed that Surrey's management personnel above Biggs' level promptly responded to complaints reaching them by telling Biggs his conduct was unacceptable and would have to stop or else.

■ Under these circumstances we are of the opinion that the *Porter* doctrine authorizes Surrey's pursuit of indemnification from Biggs. Since it appears that Kelly's primary claims, which were admitted by Biggs in his sworn testimony, fall within the "conditions of work" ambit of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, it can perhaps be found that Surrey was justified in concluding that Kelly's claim would probably survive a motion for a directed verdict. Thus the issues which the court will have to resolve on remand are: (1) Whether it was reasonable for Surrey—under the circumstances existing at the time it settled with Kelly—to conclude that it was facing trial in the federal lawsuit with the likely prospect of the case going to the jury for resolution; and (2) Whether, in view of Biggs' admissions, Surrey was justified in concluding that if the case did go to the jury its exposure to a large damage award was significant enough to warrant the settlement it made.

Once Surrey lays a prima facie foundation for its claim, Biggs should be given the opportunity to demonstrate that the answer to the foregoing two issues should be in the negative or that Surrey was a joint tortfeasor which knew or should have known of the sexually hostile working environment and either ratified it or acquiesced in it by declining to take timely and proper action to correct it. *Katz v. Dole*, 709 F.2d 251 (4th Cir.1983).

As we indicated earlier, the order makes no findings of fact or conclusions of law which give a clue as to the basis for the trial court's ruling. We therefore reverse that part of the judgment denying Surrey's claim for indemnification and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

REIF, P.J., concurs.

MEANS, J., concurs in result.