Hinkle, J.
These consolidated cases arise out of the relationship between Astra USA, Inc. (“Astra”) and Lars P.E. Bildman, its former president, Chief Executive Officer and a director.[3] Bildman’s motion for partial summary judgment addresses two of Astra’s claims in Civil Action No. 98-0580-C. First, Bildman argues that summary judgment is warranted on Astra’s declaratory judgment request that it properly rescinded his employment contract (Count IV). Second, Bildman argues for summary judgment on Astra’s claim that he should reimburse Astra for expenses incurred in connection with its settlement of a Title VII suit filed by the Equal Employment Opportunity Commission (“the EEOC”).[4] After a hearing, for the following reasons, the court ALLOWS Bildman’s motion.

BACKGROUND

Except where noted, the following facts are undisputed in the summary judgment record.
In 1981, Astra hired Bildman as its president and Chief Executive Officer and appointed him to its Board of Directors. On June 15, 1993, Astra entered into a new written employment agreement with Bildman, effective July 1 of that year. From 1993 until his suspension in April 1996, Bildman continued as Astra’s president, CEO and as a director.
During negotiations with Bildman regarding that employment contract, no Astra representative asked him about his personal conduct, and Bildman made no representations about it. The contract itself also made no reference to such conduct.
On April 28, 1996, Astra’s Board suspended Bildman and began an investigation into his conduct. In June 1996, Astra terminated Bildman and rescinded his employment contract.
The summary judgment record is replete with references to Bildman’s misconduct, allegedly occurring between 1987 and 1996. A close examination of the evidentiary support in the record shows that Bildman’s pre-1993 misconduct[5] involves using Astra funds for personal expenses, touching female employees, and failing to stop such conduct by other Astra employees. See ¶¶2-4, 11(a), Astra’s Counterstatement of Undisputed Material Facts and the affidavits referenced therein.
In 1998, the Equal Employment Opportunity Commission (“the EEOC”) filed a complaint against Astra, EEOC v. Astra USA, Inc., Civil Action No. 98-40014 (D.Mass.), which alleged that Astra had violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 by subjecting female employees to quid pro quo sexual harassment and a hostile work environment. The complaint alleged involvement by Bildman and other Astra “management officials, its agents and customers” in the harassment and, among other things, stated that:
Although aware of the pervasive harassment, [Astra] failed to take remedial action and instead took actions to conceal the harassment and minimize its liability, including but not limited to discouraging complaints of sexual harassment, terminating individuals who complained of sexual harassment, requiring employees to sign statements stating that they had not witnessed sexual *687 harassment and/or racial harassment, entering into settlement agreements with those who complained of sexual harassment which precluded those individuals from filing charges with the EEQC and/or providing information to the EEOC and requiring individuals to sign an arbitration agreement waiving their rights to the remedies provided under Title VII and the 1991 CRA, as a condition of future participation in the company's profit sharing plan.
Astra settled this complaint by entering into a consent decree with the EEOC, which established a fund in the amount of $9,850,000 for its employees who had been subjected to sexual harassment. The consent decree stated that Bildman and other Astra “management officials, agents, and customers” had participated in the sexual harassment, and, among other relief, directed Astra to maintain and comply with its sexual harassment policy.
The consent decree did not include an admission of wrongdoing by Astra. Bildman was not a party to the EEOC case or the investigations nor was he represented at the proceedings or the settlement negotiations.

DISCUSSION

Summary judgment is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. See Community Nat. Bank v. Dawes, 369 Mass. 550, 553-55 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable factual issue and of showing that it is entitled to judgment. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, that party may meet its burden by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of an element is unlikely to be forthcoming at trial.” Flesner v. Technical Commun. Corp., 410 Mass. 805, 809 (1991); see also Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party demonstrates the absence of a trial issue, the opposing party must respond with evidence of specific facts establishing the existence of a factual dispute. See Pederson, 404 Mass. at 17.
In moving for summary judgment, Bildman contends that Astra has an adequate remedy that precludes rescission of his employment contract and that there is no authority for Astra’s reimbursement claim. In response, Astra contends that during negotiations for his employment contract, Bildman had a legal duty, specifically a fiduciary duty, to disclose any misconduct in which he had previously been engaged. Astra also asserts that Title VII consent decrees, including Astra’s, are subject to separate reimbursement claims against the employees involved in the misconduct.
I. Astra’s Claim for Rescission of Bildman’s Employment Agreement (Count IV)
In Count IV, Astra seeks a declaratory judgment that it properly rescinded Bildman’s employment contract. Astra seeks rescission on the theory that Bildman fraudulently induced it to execute the agreement by failing to disclose his misconduct. See ¶¶54-62, 75-80, Astra’s Complaint. Astra argues that Bildman’s positions as officer and director imposed a fiduciary duty to disclose his misconduct. See ¶60, Astra’s Complaint. However, Astra has provided no evidence that Bildman affirmatively misrepresented any material fact in connection with negotiations for his employment contract. See Yorke v. Taylor, 332 Mass. 368, 371 (1955); Reed v. A.E. Little Co., 256 Mass. 442, 448-50 (1926) (fraudulent inducement requires either negligent or intentional misrepresentations). Bildman contends that the agreement cannot be equitably rescinded in the circumstances of this case, where he performed under the contract for three years and, according to the uncontroverted evidence, made no affirmative misrepresentation during the contract negotiations or in the contract itself.
Astra’s arguments in favor of rescission three years after inception of the agreement on a theory of failure to disclose information about which Astra never inquired are unpersuasive. No legal authority brought to my attention supports the use of rescission in these circumstances.[6] As the Supreme Judicial Court stated in Coggins v. New England Patriots Football Club, Inc., 397 Mass. 525, 536 (1986), one case on which Astra relies: “We recognize that, because rescission is an equitable remedy, the circumstances of a particular case may not favor its employment.” In Coggins, the plaintiff sought rescission of a business merger. Passage of time was one factor weighing against rescission in Coggins, and that same reasoning applies here. See also In re Ivan F. Boesky Sec. Litig., 825 F.Sup. 623, 637 (S.D.N.Y. 1993) (under New York law “rescission may be obtained only when it is reasonably feasible to return the parties to their pre-contract status quo.”) (citations omitted), aff'd, 36 F.3d 255, 264-65 (2d Cir. 1994).
The timing of Astra’s rescission claim also distinguishes Astra’s cited authority dealing strictly with employment contracts. See Shaw’s Supermarket’s, Inc. v. Delgiacco, 410 Mass. 840, 842-43 & n.2 (1991) (discussing rescission in context of fraudulent misrepresentation, not failure to disclose); Cooke v. Lynn Sand & Stone Co., 37 Mass.App.Ct. 490, 496-99 (1994) (rescission used as defense to deny enforcement of secret employment contract); Ward v. American Mut. Liab. Ins. Co., 15 Mass.App.Ct. 98, 100-01 (1983) (rescission used as defense to excuse allegedly wrongful terminations based on employees’ refusal to sign new contracts that held stricter confidentiality clauses); Nadal-Ginard v. Children’s Hospital Corp., Civ. No. 943782E, 4 Mass. L. Rptr. 506, 1995 WL *688 1146118, *78 (Mass.Super.Ct. 1999) (rescission used as defense to excuse further performance on employment contract); Hampton v. Sandy Cowen Agency, Inc., 739 P.2d 1331, 1333 (Ariz.Ct.App. 1987) (discussing voidability of separate contract for severance pay where employer discovered non-disclosure only after termination); Morgan v. American Univ., 534 A.2d 323, 325, 331 n. 17 (D.C. 1987) (discussing rescission as defense at trial, not as remedy); Jewish Ctr. of Sussex Cty. v. Whale, 397 A.2d 712, 714-16 (N.J.Super.Ct.Ch.Div. 1978) (rescinding employment contract where non-disclosure discovered only four months after start of performance), aff'd, 411 A.2d 475, 476 (N.J.Super.App.Div. 1980); Fuller v. DePaul Univ., 12 N.E.2d 213, 216 (Ill.App.Ct. 1938) (discussing rescission as defense, where non-disclosure discovered only after work begun). The remaining cases relied on by Astra present different factual scenarios and deal with other types of corporate contracts.[7]
II. Astra’s Claim for Reimbursement of Expenses under the EEOC Consent Decree
As noted, Astra’s complaint is silent as to a theory of liability for its entitlement to reimbursement of expenses incurred in connection with the EEOC case. See supra note 4; ¶¶35-37 & 66 of Astra’s Complaint and Prayer for Relief; ¶157 of Astra’s Answer to Bildman’s Counterclaim.
Bildman argues that no legal support exists for Astra’s attempt to collect those expenses. In opposing Bildman’s motion, Astra asserts that reimbursement should form a part of its claims for rescission and breach of fiduciary duty and has submitted affidavits from four employees who witnessed or were subjected to Bildman’s improper conduct.
Bildman’s contention is that there is no right of indemnity or contribution, express or implied, under Title VII and no federal common law right to such relief. In making that argument, Bildman relies on Northwest Airlines, Inc. v. Transport Workers Union of America, 451 U.S. 77 (1981). There, the Supreme Court examined the language and legislative history of Title VII and the Equal Pay Act and held that those statutes did not create a right to contribution, express or implied, by an employer against unions that bore at least partial responsibility for the statutory violations. Id. at 91-98.
In response, Astra argues that Northwest Airlines does not address the situation here, where an employer seeks indemnification or contribution from a former executive allegedly involved in sexual harassment. Astra also argues that Northwest Airlines does not address state common law or statutory rights to reimbursement. See id. at 87 n.17, 97 n.38. In sum, Astra appears to assert that state common law rights for indemnification or contribution. G.L.c. 231B, §1(a) (2000) (contribution for joint tortfeasors) or G.L.c. 151B, §4(5) (1996) (aiding and abetting discriminatory acts, see Beaupre v. Smith & Assocs., 50 Mass.App.Ct. 480, 490-96 (2000)) provide a basis for the damages it seeks.
Because Astra’s consent decree with the EEOC resulted from an action against Astra, not Bildman, and because Bildman was neither party to the EEOC case nor involved in the investigation or settlement, I am unpersuaded that unpled state law claims give Astra a right to relief. As argued by Bildman, Chapter 15 IB contains no provision for contribution or indemnification, and the intent of that statute would be contravened if a corporation that breached anti-discrimination laws could recover from its employees the amounts the corporation paid to investigate and resolve an EEOC complaint.
Astra's reliance on Biggs v. Surrey Broadcasting Co., 811 P.2d 111, 114 (Okla.Ct.App. 1991), is misplaced. There, as here, a former employer sued a supervisory employee allegedly involved in the sexual harassment at issue. The unlawful discrimination in Biggs was clearly attributable to one actor.[8] Astra’s consent decree with the EEOC focused on its own sexual harassment policies and practices, and the underlying case related to the hostile work environment created by several individuals connected with Astra, not Bildman alone. This distinction is especially important because, as noted, Bildman was not involved or represented during the EEOC investigation or the negotiations that led to the consent decree:
Astra’s reliance on Elias v. Unisys Corp., 410 Mass. 479, 482 (1991) (discussing common law indemnity), and Fall River Housing Authority v. H.V. Collins Co., 414 Mass. 10, 14 (1992) (implied contractual indemnity), is also misplaced. Indemnification applies to a party who is “without fault, [and] compelled by operation of law to defend himself against the wrongful act of another.” Elias, 410 Mass, at 482. Here, even without an express admission of liability by Astra in the EEOC consent decree, it strains credulity to argue that Astra falls within that definition. As set forth in the consent decree, Astra “management officials, agents, and customers” participated in the improper conduct.
Similarly, this case does not come within the ambit of Fall River Housing Authority, 414 Mass. at 14. There, the Supreme Judicial Court recognized an implied right to contractual indemnity “only where there are special factors surrounding the contractual relationship which indicate an intention by one party to indemnify another in a particular situation.” Id. No evidence of such special factors is before me.

ORDER

For the foregoing reasons, the court ALLOWS Bildman’s motion for partial summary judgment. An ORDER will enter dismissing Count IV of Civil Action No. 98-0580-C and striking so much of Astra’s complaint as seeks damages for reimbursement of its expenses in EEOC v. Astra USA, Inc., Civil Action No. 98-40014 (D.Mass. 1998).

 My Memorandum of Decision and Order of June 28, 2000 sets out the nature of the claims in these cases. Ido not repeat that information here.

 Astra’s reimbursement claim is not pled as a separate theory of liability but simply described as an element of damages to which Astra is entitled. See, e.g., ¶157 of Astra’s Answer to Bildman’s Counterclaim, in which Astra states: “Astra admits that it seeks to recoup all of the damages and losses it incurred as a result of Bildman's misconduct, including all funds expended in and as a result of the EEOC proceedings.”

 Only evidence of misconduct occurring before 1993 is relevant for purposes of Astra’s rescission claim.

 Nothing in this Decision should be read to minimize Astra’s fiduciary duty claim against Bildman. If Astra succeeds on that claim, it is of course entitled to all damages the law permits for a breach of fiduciary obligations. In this regard, I note that under some circumstances, a corporate officer can be required to forfeit compensation for a breach of fiduciary duties. See Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 12-13 (1983), citing Wilshire Oil Co. of Texas v. Rite, 406 F.2d 1061, 1062 (5th Cir.), cert. denied, 396 U.S. 843 (1969); Harry R. Defier Corp. v. Kleeman, 243 N.Y.S.2d 930, 938 (1963), aff'd, 229 N.E.2d 569, 570 (1967); cf. Lydia E. Pinkliam Med. Co. v. Gove, 303 Mass. 1, 4-6 (1939) (discussing certain circumstances, distinguished in Chelsea Industries, 389 Mass, at 12-16, where “requiring [disloyal employees] to surrender [their] compensation . . . would, in effect, be imposing ... a penalty disproportionately harsh under all the circumstances”). In the circumstances of this case, Chelsea Industries and the cases it cites, upon which Astra relies heavily, stand for that proposition and nothing more. Those cases do not discuss rescission and deal with different breaches of fiduciary obligations than presented here. In Chelsea Industries, for example, the defendant employees had set up a competing business venture. See id. at 4-9.

 Astra cites a plethora of other cases as authority. Some are distinguishable because they deal with commercial contracts as opposed to corporate or personal services contracts. See Kannavos v. Annino, 356 Mass. 42, 47-48 (1969) (discussing rescission in course of real estate contracts); Karal v. Marken, 333 Mass. 743, 745-46 (1956) (discussing breach of fiduciary duty in context of promissory note); Yorke v. Taylor, 332 Mass. 368, 372-73 (1955) (discussing rescission in context of real estate contract); Markell v. Sidney B. Pfeifer Found., Inc., 9 Mass.App.Ct. 412, 439-45 (1980) (discussing rescission of trust instruments), overruled on other grounds; Cleary v. Cleary, 427 Mass. 286, 291-95 (1998) (holding that trustee bears burden of proving that transaction was not violative of his obligations); Dopp v. Pritzker, 38 F.3d 1239, 1243-47 (1st Cir. 1994) (discussing rescission in context of stock subscription agreement); Women’s Federal Savings and Loan Ass’n v. Nevada Nat. Bank, 811 F.2d 1255, 1258-60 (9th Cir. 1987) (discussing breach of fiduciary duty in context of financing agreement); Stefko v. Meridian Stinehour, Inc., 1998 WL 326743, *1 (S.D.N.Y. 1998) (discussing recission in context of contract to manufacture book-bindings, affirmative misrepresentations); Feltz v. Walker, 49 Conn. 93, 1881 WL 2150, *46 (1881) (fraud in course of real estate transaction); Morris v. Anderson, 259 N.E.2d 601, 603 (Ill.App.Ct. 1970) (discussing substantial performance in context of broker’s commission); Wolford v. Freeman, 35 N.W.2d 98, 102-03 (Neb. 1948) (fraud in course of real estate transaction); Linton v. Sheldon, 154 N.W. 724, 725 (Neb. 1915) (fraud in course of real estate transaction). As to Astra’s remaining corporate cases, the court parenthetically distinguishes them here. See Demoulas v. Demoulas, 428 Mass. 555, 580-81 (1998) (rescission of separate stock transactions); Puritan Med. Ctr, Inc. v. Cashman, 413 Mass. 167, 175-78 (1992) (breaches of fiduciary duty in context of separate lease and misappropriation of corporate opportunities); Samia v. Central Oil Co. of Worcester, 339 Mass. 101, 116 (1939) (rescission of separate stock transactions): Seder v. Gibbs, 333 Mass. 445, 452-54 (1956) (breach of fiduciary duty in context of separate mortgage and stock transactions); Sher v. Sandler, 325 Mass. 348, 353 (1950) (rescission of separate stock transactions); Durfee v. Durfee & Cannine, Inc. 323 Mass. 187, 196-201 (1948) (addressing whether former employee must turn over profits from self-dealing); Stetson v. French, 321 Mass. 195, 198-99 (1947) (breach of fiduciary duty by former employer in withholding wages); Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 410-19 (1937) (breach of fiduciary duty in context of separate stock transactions); Reed v. A.E. Little Co., 256 Mass. 442, 448-49 (1926) (cancellation of separate release agreement); Quinn v. Burton, 195 Mass. 277, 279-81 (1907) (broker’s ability to obtain commissions after self-dealing); Geller v. Allied-Lyons PLC, 42 Mass.App.Ct. 120, 122-27 (1997) (rescission used as defense to rule separate contract for finder’s fee unenforceable); Johnson v. Witkowski, 30 Mass.App.Ct. 697, 704-12 (1991) (breach of fiduciary duty in context of separate business venture); Energy Resources Corp. v. Porter, 14 Mass.App.Ct. 296, 303 (1982) (separate breach of fiduciary duty subsumes any argument about breach of employment agreement); Horton v. Benjamin, Civ. No., 92-06697, 7 Mass. L. Rptr. No. 31, 700, 717, 1997 WL 778662, *25 (Mass.Super.Ct. 1997) (ruling out rescission in context of separate stock transactions); Strong v. Repide, 213 U.S. 419,430-31 (1909) (Philippine lawfor breach of fiduciary duty in context of separate stock transactions); Nash v. Trustees of Boston Univ., 946 F.2d 960, 967 (1st Cir. 1991) (enforcement of separate early retirement agreement); Allen v. Westpoint Pepperrell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (rescission of separate release agreement); Wartski v. Bedford, 926 F. 2d 11, 13-14, 18-22 (1st Cir. 1991) (breach of fiduciary duty where partner diverted separate business opportunity); Shane v. Shane, 891 F.2d 976, 986 (1st Cir. 1989) (rescission of separate stock transactions and release agreement); Goldman v. Belden, 754 F.2d 1059, 1067-70 (2d Cir. 1985) (rescission of separate stock transactions); Jamesbury Corp. v. Worcester Valve Co., 443 F.2d 205, 209 (1st Cir. 1971) (former employee’s separate ownership of patent); Cecconi v. Ceceo, Inc., 739 F.Sup. 41, 45 (D.Mass. 1990) (breach of fiduciary duty counterclaim where fiduciary allegedly set up competing business ventures); Detroit Lions, Inc. v. Argovitz, 580 F.Sup. 542, 547-50 (E.D.Mich. 1984) (agent’s separate breach of fiduciary duty led to football player signing employment contract with another team), affirmed in part, remanded in part, 767 F.2d 919 (6th Cir. 1985); Pacelli Bros. Transp. v. Pacelli, 456 A.2d 325, 328-30 (Conn. 1983) (rescission of separate settlement agreement); Grone v. Lincoln Mut. Life Ins. Co., 430 N.W.2d 507, 510-11 (Neb. 1988) (rescission of employee’s resignation after employer approached with details of non-disclosure); State ex. rel. Neb. St. Bar Ass’n v. Douglas, 416 N.W.2d 515, 530-31 (Neb. 1987) (discussing, in disciplinary context, government attorney’s breach of fiduciary duty in receiving compensation from outside sources), cert. denied, 488 U.S. 802 (1988); Becker v. Capwell, 527 P.2d 120, 121-23 (Or. 1970) (suit by purchaser to recover secret profits, not salary, from real estate broker).

 After deciding that a remand was appropriate to consider the possibility of reimbursement, the Biggs court speculated that once the corporation “lays the prima facie foundation for its claim, Biggs should be given the opportunity to demonstrate . . . that [the corporation] was a joint tortfeasor which knew or should have known of the sexually hostile working environment and either ratified it or acquiesced in it by declining to take timely and proper action to correct it." 811 P.2d at 115. This dicta represents the views of two justices (another concurred only in the result) on an intermediate appellate court. Biggs is neither binding on this court nor persuasive in these different circumstances.

 Hakan Mogren and Carl-Gustaf Johansson.