GRILLO VENTURES v. VU



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:GRILLO VENTURES v. VU

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 GRILLO VENTURES v. VU
2020 OK CIV APP 57
Case Number: 118666
Decided: 10/02/2020
Mandate Issued: 11/05/2020
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2020 OK CIV APP 57, __ P.3d __

 


GRILLO VENTURES, LLC, Plaintiff,
v.
THUY THU THI VU, ROBERT L. FINLEY, DEBORAH, A. FINLEY, FAN DISTRIBUTION COMPANY, AND CAPITAL ONE BANK (USA), NA, Defendants,

THUY THU THI VU, Third Party Plaintiff/Appellant,
v.
FORREST "BUTCH" FREEMAN, OKLAHOMA COUNTY TREASURER, BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OKLAHOMA, Third-Party Defendants/Appellees.
APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA
HONORABLE CINDY H. TRUONG, JUDGE
AFFIRMED
Edward F. Simmons, HUFF, SIMMONS & DAVILA, Oklahoma City, Oklahoma,
B.J. Brockett, Oklahoma City, Oklahoma, for Third-Party Plaintiff/Appellant
Rodney J. Heggy, Oklahoma City, Oklahoma, for Third-Party Defendants/Appellees
Bay Mitchell, Presiding Judge:
¶1 The third-party plaintiff, Thuy Thu Thi Vu, seeks to recover, via writ of mandamus, the excess proceeds of a tax sale that the Oklahoma County Treasurer erroneously paid to a prior owner. We find that, although the Treasurer may be liable to Ms. Vu for negligently paying the prior owner, and that the prior owner may be liable for its apparently fraudulent conduct, Ms. Vu has no clear legal right to payment of the excess proceeds from the county because those funds are no longer in the hands of the county. "[M]andamus will not lie to compel performance of the impossible." Town of New Wilson v. Davis, 1938 OK 516, ¶7, 83 P.2d 399, 400.
BACKGROUND
¶2 The pertinent facts of this case are undisputed and, we hope, unique. In 2002, Robert and Deborah Finley, who were defendants below but are not parties to this appeal, purchased a vacant lot in Oklahoma City for the then-outstanding delinquent taxes, being $388.84. The lot is located near the present-day Plaza District, northwest of downtown Oklahoma City. The Finleys never developed the lot and failed to pay real estate taxes from 2015 through 2018.[1] A tax sale was set for June 10, 2019. The Finleys were sent notice of the sale, via certified mail, on April 4, 2019.
¶3 On April 20, 2019, barely a month before the scheduled tax sale and just sixteen days after the Finleys were sent notice of the sale, the Finleys sold the lot via warranty deed to Ms. Vu. According to the record, the sale appears to have been a rather informal affair, without any title search conducted by Ms. Vu. According to Ms. Vu's answer, she paid $38,000 in cash and cash equivalents for the property in exchange for the Finleys' warranty deed. Ms. Vu claims the Finleys told her nothing of the outstanding liens or pending tax sale. The warranty deed was duly recorded on May 20, 2019, however, Ms. Vu did not notify the county treasurer's office of the sale, attempt to pay delinquent taxes, or satisfy the outstanding lienholders.
¶4 The tax sale went ahead as scheduled on June 10, 2019. The original plaintiff, Grillo Ventures LLC, also not a party to this appeal, was the high bidder, paying $83,000 for the still-vacant lot. The county executed a resale deed in Grillo's favor on the date of the tax sale, and it was recorded the following day. The sum of $986.35 was withheld by the county for the outstanding taxes and other expenses related to the sale, leaving $82,013.65 in the hands of the county as excess proceeds of the sale.
¶5 It is this $82,013.65 in excess proceeds that forms the basis of this appeal. By statute, the county is to hold those proceeds in a separate fund for "the record owner," as follows:
When any tract or lot of land sells for more than the taxes, penalties, interest and cost due thereon, the excess shall be held in a separate fund for the record owner of such land, as shown by the county records as of the date said county resale begins, to be withdrawn any time within one (1) year. No assignment of this right to excess proceeds shall be valid which occurs on or after the date on which said county resale began. At the end of one (1) year, if such money has not been withdrawn or collected from the county, it shall be credited to the county resale property fund.
68 O.S. Supp. 2014 §3131(C).
¶6 Nineteen days after the sale, Robert Finley appeared at the county treasurer's office and, seemingly fraudulently, asked the county to pay him the funds. He executed an affidavit on county letterhead, apparently prepared by the county, stating he was "the former owner" and that he should be paid the excess proceeds from the tax sale of "my property." The county, not knowing anything of the sale to Ms. Vu and apparently not performing any meaningful title check of its own, paid Robert Finley the full $82,013.65 on the same day he requested the funds.
¶7 By August 2019, Grillo had discovered Ms. Vu's deed and filed a quiet title action against her, the Finleys, and the outstanding lienholders. Ms. Vu answered and filed crossclaims against the Finleys for fraud and breach of warranty. Ms. Vu also filed a third-party petition against the Oklahoma County Treasurer and the Commissioners of the County of Oklahoma (collectively, "the county") seeking a writ of mandamus requiring the county to pay her the excess proceeds pursuant §3131. In the alternative, Ms. Vu sought a money judgment against the county for $82,013.65, plus interest, costs, and attorney fees.
¶8 Ms. Vu did not challenge below, and does not challenge on this appeal, the adequacy of the proceedings leading to Grillo's tax deed. An agreed order quieting title in Grillo was entered below. After Ms. Vu dismissed without prejudice her crossclaims against the Finleys, only her third-party claims against the county remained.
¶9 The county filed a motion to dismiss these claims, arguing that the claim for mandamus failed as a matter of law and that Ms. Vu's alternative request for a money judgment failed for want of compliance with Oklahoma's Governmental Tort Claims Act. Ms. Vu responded and defended her request for a writ of mandamus but conceded she had not complied with Oklahoma's Governmental Tort Claims Act.
¶10 The trial court entered judgment against Ms. Vu on both claims, denying her request for a writ of mandamus and dismissing her "tort claim"[2] without prejudice to refiling. Ms. Vu timely appealed the denial of her request for mandamus, but does not challenge the court's dismissal of her alternative claim for a money judgment.
ANALYSIS
¶11 Our review of an order of dismissal is de novo. Miller v. Miller, 1998 OK 24 ¶15, 956 P.2d 887. The only question before us is the propriety of the trial court's denial of Vu's request for a writ of mandamus. Before such a writ may issue, a court must find (1) a clear legal right vested in the party seeking mandamus, (2) the governmental official's refusal to perform a plain legal duty which does not involve the exercise of discretion, and (3) the inadequacy of other relief. 12 O.S. 2011 §§1451-62; Price v. Bd. of Cty. Comm'rs of Pawnee Cty., 2016 OK 16, ¶6, 371 P.3d 1089, 1091. "Mandamus is proper only to compel an officer to perform a ministerial duty required by law." Melton v. City of Durant, 1974 OK 56, ¶10, 521 P.2d 1372, 1374.
¶12 From its general order of denial, it is not clear which element or elements of mandamus the court below found lacking. Although we ultimately determine that Ms. Vu cannot show a clear legal right to the funds at issue, see ¶¶17-20 below, we feel compelled to note, for the benefit of both county officials who are responsible for paying excess funds under §3131(C) and the parties entitled to receive those funds, that we find the county's interpretation of the statute unpersuasive.
¶13 Most notably, we disagree with the county's assertion that "the record owner" as used in §3131(C) necessarily references ownership according to the county assessor's records on the date of the sale. The primary support the county offers for this interpretation is by referencing the legislature's definition of "record owner" in 68 O.S. 2011 §3127, which relates to the contents of the notice of the tax sale and mandates to whom the county must send the notice. Section 3127 first notes that the notice of sale must contain "the name of the record owner of said real estate as of the preceding December 31 or later as shown by the records in the office of the county assessor ...." Id. (emphasis added). Section 3127 later requires that the treasurer mail the notice "to the record owner of said real estate, as shown by the records in the county assessor's office, which records shall be updated based on real property conveyed after October 1 each year ...." Id. (emphasis added). The county points to this definition of "the record owner" as controlling who is "the record owner" for purposes of §3131(C). However, for several reasons, we do not agree with the county's interpretation.
¶14 First, we note that the language of §3131(C) is different than that of §3127. Section 3131 does not reference the records of the county assessor's office, but references "the county's records." Although this could be a reference to the county assessor's records, it could also be a reference to the treasurer's records, or, we think most likely, the records of the county clerk's office. After all, it is the county clerk who is tasked with maintaining the vast majority of those records evidencing ownership of real property. See 68 O.S §225, §§284-300. Without further clarifying which office's records must be reviewed, we find "the record owner" as used in §3131(C) to be ambiguous. Absent any further direction from the text, we think the most logical reading of "the record owner" in §3131(C) means the owner according to the records of the county clerk's office at the time of the sale. In this case, all parties agree that was Ms. Vu.
¶15 The county also objects to this definition because it would require the treasurer to perform a title check prior to disbursing excess funds from county tax sales. Perhaps so. However, we do not find this fact to be pertinent in determining what was meant by "the record owner" in §3131(C). Further, we find this objection somewhat disingenuous as the treasurer is already required to check the county clerk's records prior to the sale in order to determine if there are any mortgagees entitled to notice. See 68 O.S. 2011 §3127 (requiring the treasurer to notify "all mortgagees of record"). The treasurer here admits it must perform some check of the county records prior to the sale, but objects to a reading of the statute that would "require the Treasurer to engage a title search firm to repeat the search every hour, every day, every week or any other month before the Tax Resale auction ...." However, reading "the record owner" and "the county records" in §3131(C) to require the treasurer to check the records of the county clerk's office to determine if there has been any sale of the property after the issuance of the notice of sale, but before issuing a check for the excess proceeds of the sale, places no such burden on the treasurer. It requires only a second check prior to the issuance of what is (as this case shows), a sometimes substantial sum and would all but eliminate cases such as this one, where the prior owner is permitted to claim the excess proceeds by fraud.
¶16 Simply put, if the legislature had intended "the county records" in §3131(C) to reference the records of the county assessor's office, it could have said so, as it did in §3127. As the statute stands today, however, we believe the statute requires the treasurer to pay the excess proceeds of the sale to "the record owner" as determined by consulting the records of the county clerk's office at the time of the sale.
¶17 Unfortunately for Ms. Vu, the analysis to this point is merely obiter dicta. That is because, in this case, under the undisputed record as presented below, Ms. Vu cannot show a clear legal right to the excess funds at issue because the county treasurer has already paid those funds to Robert Finley. The fund she asked the court below to require the county to turn over to her simply does not exist. Although we are not unsympathetic to Ms. Vu's position,[3] we are compelled to affirm the trial court's denial based on the simple fact that the funds Ms. Vu seeks to obtain are no longer in the hands of the county. "[M]andamus will not lie to compel performance of the impossible." Town of New Wilson v. Davis, 1938 OK 516,¶7, 83 P.2d 399, 400.
¶18 Although there are no reported cases directly on point, similar cases support this result. In Rierdon v. Reder, 1936 OK 824, 63 P.2d 751, for example, a purchaser paid a county treasurer for tax sale certificates for property located in the city of Ardmore. Per statute, the county treasurer paid the proceeds of the sale to the city treasurer, who deposited the money in a fund related to certain street improvement districts. The tax sale certificates were later determined to be invalid, and the purchaser sued the city treasurer for a refund of money paid for the now-defunct certificates. However, the city treasurer had used the money "to pay interest or bonds" prior to the adjudication of the invalidity of tax certificates. Id. ¶5. The purchaser argued that "it was the plain, mandatory duty of the defendant, the city treasurer, and the custodian of the fund, to refund and pay back to the plaintiff the amount paid into each of said street improvement districts. That if there was not sufficient amount on hand, the incoming revenue in said street improvement districts should be used to pay plaintiff's claim." Id. However, the Oklahoma Supreme Court affirmed the trial court's dismissal because the purchaser admitted in its petition that the city treasurer no longer held the funds requested. Id. ¶10 ("An examination of the petition herein shows that it not only fails to allege the money is being held by said treasurer, but is an admission that she does not retain the same.") See also Commissioners of Land Office of Oklahoma v. Brunson, 1935 OK 737, 51 P.2d 500 (holding that plaintiffs, who had succeeded in recovering the corpus of a trust fund previously held by the state, were unable to recover the interest via mandamus where the plaintiffs "wholly failed to prove the present existence of any sum of money representing interest on said trust fund ....").
¶19 In this case, Ms. Vu not only failed to allege that the county treasurer was holding the money but admits that the excess funds she seeks have already been paid, albeit erroneously, to Robert Finley. The trial court was, therefore, unable to order the county to pay those same funds to her. If Ms. Vu is to be made whole, she must seek a money judgment against the county for paying the wrong person, or against the Finleys themselves for their seemingly fraudulent conduct.
¶20 AFFIRMED.
SWINTON, V.C.J., concurs.
FOOTNOTES
[1] Two other judgment liens, totaling $11,692.70 and held by the other two defendants that are not parties to this appeal, had also been filed against the property. Those liens were extinguished during the proceedings below and are not a part of this appeal.
[2] Ms. Vu did not use the word "tort" when making her alternative claim for a money judgment against the city. This characterization was first pressed by the county in its motion to dismiss and carried forward into the trial court's dismissal. It is not clear from the record that Ms. Vu's alternative claim for a money judgment sounded in tort and we make no such pronouncement here.
[3] Of course, our sympathy for Ms. Vu is tempered by the facts that she (1) paid $38,000 in cash for property without performing any sort of due diligence, (2) could have redeemed the lot at any time before the execution of the tax deed by tendering the delinquent taxes to the county, and (3) could have demanded the excess funds from the county at any time prior to the county's payment of those funds to Robert Finley.
On that last point, had the county refused payment, and the funds were still in the hands of the county, her quest for a writ of mandamus would have been successful. Holliman v. Basden, 1935 OK 708, ¶6, 47 P.2d 138, 138 ("[I]t is the duty of the county treasurer to hold money paid to him for the benefit of the holder of the tax sale certificate. The money in question could never become the property of the county. It was held in a separate fund, and never commingled with the county's funds, and it was clearly the duty of the county treasurer to pay said funds to the party who was entitled to receive the same. The record clearly discloses that the plaintiff below was entitled to receive the funds in question. This being true, mandamus was the proper remedy.")




PEMBERTON, J., concurs specially.
¶1 Although I concur with the result, I respectfully take issue with the obliter dicta, namely the analysis regarding interpretation of 68 O.S. § 3131(C). The majority identifies as ambiguous the phrase, "the county records," and then provides as the interpretation "the most logical reading." The Oklahoma Supreme Court has provided principles to follow when interpreting ambiguous language in a statute, to wit:
If the legislative intent cannot be ascertained from the language of a statute, as in the cases of ambiguity, we must apply rules of statutory construction. YDF, Inc. v. Shlumar, Inc., 2006 OK 32, ¶ 6, 136 P.3d 656. The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation. The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation. In Matter of J. L. M., 2005 OK 15, ¶ 5, 109 P.3d 336. Where a statute is ambiguous or its meaning uncertain it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent. Wylie v. Chesser, 2007 OK 81, ¶ 19, 173 P.3d 64. In ascertaining legislative intent, the language of an entire act should be construed with a reasonable and sensible construction. Udall v. Udall, 1980 OK 99, ¶ 11, 613 P.2d 742. Statutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits. Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n., 1988 OK 117, ¶ 7, 764 P.2d 172. The legislative intent will be ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each. Keating v. Edmondson, 2001 OK 110, ¶ 8, 37 P.3d 882. Any doubt as to the purpose or intent of a statute may be resolved by resort to other statutes relating to the same subject matter. Naylor v. Petuskey, 1992 OK 88, ¶ 4, 834 P.2d 439. This Court will not limit consideration to one word or phrase but will consider the various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent and the public policy underlying the intent. YDF, Inc., 2006 OK 32, ¶ 6, 136 P.3d 656. Legislative purpose and intent may also be ascertained from the language in the title to a legislative enactment. Naylor, 1992 OK 88 ¶ 4, 834 P.2d 439; Independent School District No. 89 of Oklahoma County v. Oklahoma City Federation of Teachers, Local 2309 of American Federation of Teachers, 1980 OK 89, ¶ 17, 612 P.2d 719.
McIntosh v. Watkins, 2019 OK 6, ¶ 4, 441 P.3d 1094, 1096.
¶2 As indicated by the McIntosh Court, application of the rules of statutory construction is mandatory when dealing with an ambiguity. Here, the majority identifies an ambiguity and provides resolve without having fully analyzed the ambiguity within the required framework. If we are to resolve an ambiguity, we must fully analyze the same using the interpretative tools available. I respectfully submit that was not done here. However, because the majority's identification of an ambiguity and analysis thereof do not impact the outcome -- that the third-party plaintiff, Thuy Thu Thi Vu, is not entitled to a writ of mandamus -- further analysis of Section 3131 is not warranted.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 117, 764 P.2d 172, 59 OBJ 2936, Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n
Discussed
 1992 OK 88, 834 P.2d 439, 63 OBJ 1834, Naylor v. Petuskey
Discussed at Length
 1938 OK 516, 83 P.2d 399, 183 Okla. 502, TOWN OF NEW WILSON v. DAVIS
Discussed at Length
 1936 OK 824, 63 P.2d 751, 178 Okla. 606, RIERDON v. REDER
Discussed
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSON
Discussed
 1935 OK 708, 47 P.2d 138, 173 Okla. 63, HOLLIMAN v. BASDEN
Discussed
 1935 OK 737, 51 P.2d 500, 175 Okla. 101, COMMISSIONERS OF THE LAND OFFICE v. BRUNSON
Discussed
 1974 OK 56, 521 P.2d 1372, MELTON v. CITY OF DURANT
Discussed
 2005 OK 15, 109 P.3d 336, IN THE MATTER OF J.L.M.
Discussed
 2006 OK 32, 136 P.3d 656, YDF, INC. v. SCHLUMAR, INC.
Discussed at Length
 2007 OK 81, 173 P.3d 64, WYLIE v. CHESSER
Discussed
 2016 OK 16, 371 P.3d 1089, PRICE v. BOARD OF COUNTY COMMISSIONERS OF PAWNEE CO.
Discussed
 1980 OK 89, 612 P.2d 719, Independent School Dist. No. 89 of Oklahoma County v. Oklahoma City Federation of Teachers, Local 2309 of American Federation of Teachers
Discussed
 1980 OK 99, 613 P.2d 742, Udall v. Udall
Discussed
 2019 OK 6, 441 P.3d 1094, MCINTOSH v. WATKINS
Discussed
 1998 OK 24, 956 P.2d 887, 69 OBJ 1172, MILLER v. MILLER
Discussed
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 3131, Resale Return
Discussed
 68 O.S. 3127, Notice of Resale of Real Estate
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA