MCINTOSH v. WATKINS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MCINTOSH v. WATKINS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MCINTOSH v. WATKINS
2019 OK 6
Case Number: 117413
Decided: 02/26/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 6, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

LEE MCINTOSH, Plaintiff/Appellant,
v.
JAKE WATKINS, Defendant/Appellee.

ON APPEAL FROM THE DISTRICT COURT OF POTTAWATOMIE
COUNTY, STATE OF OKLAHOMA; HONORABLE JOHN G. CANAVAN,
DISTRICT JUDGE

¶0 Appellant, Lee McIntosh, was involved in a hit-and-run accident caused by the appellee, Jake Watkins. Appellant sought treble damages against the appellee based upon the damage to his vehicle. The district court held 47 O.S. 2011, § 10-103 did not allow treble damages because the appellant also sustained injuries and granted summary judgment in favor of the appellee. We hold the treble damage provision in 47 O.S. 2011, §10-103 applies even if a victim sustains an injury.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION

Anthony F. Gorospe, Gorospe Law Group, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellant.

Brad L. Roberson and Lauren N. Watson, Pignato, Cooper, Kolker & Roberson, P.C., Oklahoma City, OK, for Defendant/Appellee

COMBS, J.:

I. FACTS AND PROCEDURAL HISTORY

¶1 On October 29, 2017, the defendant/appellee, Jake Watkins, was driving under the influence of alcohol and rear-ended a vehicle owned and operated by the plaintiff/appellant, Lee McIntosh. Mr. McIntosh's vehicle was damaged and he and the former co-plaintiff, Anthony McIntosh, were injured.[1] Both vehicles pulled over to the shoulder of the road and the parties exited their vehicles to discuss the accident and to inspect the damage. At some point Mr. McIntosh stated he needed to call the police to report the accident. When Mr. Watkins heard this he returned to his vehicle and fled the scene without providing Mr. McIntosh the information required under 47 O.S. 2011, §10-104 (name, address, vehicle registration number and, upon request, show a driver license and security verification form). Mr. Watkins was later arrested and charged with two counts: 1) driving a motor vehicle while under the influence of alcohol; and 2) leaving the scene of an accident involving damage in violation of 47 O.S. 2011, § 10-103. He pled no contest to the two counts and received a deferred judgment and sentence on March 9, 2018, in Case No. CM-2017-902, Pottawatomie County, State of Oklahoma.

¶2 On June 15, 2018, Mr. McIntosh signed a settlement agreement which settled all of his bodily injury claims for the sum of $25,000.00. Mr. McIntosh was also paid $17,545.66 to fully repair his vehicle and an additional $7,000.00 for the diminution of value claim. The only remaining issue left to be decided by the trial court was whether Mr. McIntosh was entitled to receive treble damages for the damage sustained to his vehicle. Mr. Watkins filed a motion for partial summary judgment which was later converted to a motion for summary judgment considering there was only one remaining issue to be decided. On August 16, 2018, a hearing was held and the trial court ruled Mr. McIntosh was not entitled to treble damages pursuant to 47 O.S. 2011, § 10-103, due to the fact he had incurred not only property damage to his vehicle but he also sustained a nonfatal injury. Mr. McIntosh appeals the trial court's ruling on this final issue.

II. STANDARD OF REVIEW

¶3 The standard for appellate review of a summary judgment is de novo and an appellate court makes an independent and nondeferential review. Nelson v. Enid Med. Assocs., Inc., 2016 OK 69, ¶7, 376 P.3d 212; Carmichael v. Beller, 1996 OK 48, ¶2, 914 P.2d 1051. That review requires examination of the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. Carmichael, 1996 OK 48, ¶2. When genuine issues of material fact exist, summary judgment should be denied and the question becomes one for determination by the trier of fact. Brown v. Okla. State Bank & Trust Co., 1993 OK 117, ¶7, 860 P.2d 230.

¶4 Legal questions involving the district court's statutory interpretation of law are also subject to de novo review. Fulsom v. Fulsom, 2003 OK 96, ¶2, 81 P.3d 652. The primary goal of statutory construction is to ascertain and to apply the intent of the Legislature that enacted the statute. Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶13, 33 P.3d 302. If the legislative intent cannot be ascertained from the language of a statute, as in the cases of ambiguity, we must apply rules of statutory construction. YDF, Inc. v. Schlumar, Inc., 2006 OK 32, ¶6, 136 P.3d 656. The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation. In Matter of J. L. M., 2005 OK 15, ¶5, 109 P.3d 336. Where a statute is ambiguous or its meaning uncertain it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent. Wylie v. Chesser, 2007 OK 81, ¶19, 173 P.3d 64. In ascertaining legislative intent, the language of an entire act should be construed with a reasonable and sensible construction. Udall v. Udall, 1980 OK 99, ¶11, 613 P.3d 742. Statutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits. Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n., 1988 OK 117, ¶7, 764 P.2d 172. The legislative intent will be ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each. Keating v. Edmondson, 2001 OK 110, ¶8, 37 P.3d 882. Any doubt as to the purpose or intent of a statute may be resolved by resort to other statutes relating to the same subject matter. Naylor v. Petuskey, 1992 OK 88, ¶4, 834 P.2d 439. This Court will not limit consideration to one word or phrase but will consider the various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent and the public policy underlying the intent. YDF, Inc., 2006 OK 32, ¶6. Legislative purpose and intent may also be ascertained from the language in the title to a legislative enactment. Naylor, 1992 OK 88 ¶4; Independent School District No. 89 of Oklahoma County v. Oklahoma City Federation of Teachers, Local 2309 of American Federation of Teachers, 1980 OK 89, ¶17, 612 P.2d 719.

III. ANALYSIS

¶5 The parties do not dispute that Mr. Watkins collided into and damaged Mr. McIntosh's vehicle while it was operated by Mr. McIntosh. The parties do not dispute Mr. Watkins left the scene of the accident prior to fulfilling the requirements of 47 O.S. 2011, § 10-104. In Mr. McIntosh's response to the motion for summary judgment he denied Mr. Watkin's statement of undisputed material facts that Mr. McIntosh had sustained and was treated for bodily injury. However, he limited this denial only as to the relevancy of that fact to the issue presented. Both his petition and amended petition clearly stated the automobile accident caused him bodily injury. There remain no genuine issues of material fact in dispute that would prohibit summary judgment. The issue before this Court is purely a question of law concerning what damages a plaintiff is entitled to receive when he or she is involved in a hit-and-run accident involving both property damage and bodily injury.

¶6 Mr. McIntosh seeks treble property damage. Mr. Watkins was charged and pled no contest to violating 47 O.S. 2011, § 10-103 in the criminal matter regarding the subject accident. Under this statute, a person who leaves the scene of an accident where an attended vehicle is damaged and without providing requisite information shall be guilty of a misdemeanor and can also be liable in a civil action for treble damages caused by the accident. Title 47 O.S. 2011, § 10-103 provides:

The driver of any vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of such accident until he has fulfilled the requirements of Section 47-10-104 of this title. Every such stop shall be made without obstructing traffic more than is necessary. Any person failing to stop or comply with said requirements under such circumstances shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed Five Hundred Dollars ($500.00) or by imprisonment in the county jail for not more than one (1) year, or by both such fine and imprisonment. In addition to the criminal penalties imposed by this section, any person violating the provisions of this section shall be subject to liability for damages in an amount equal to three times the value of the damage caused by the accident. Said damages shall be recoverable in a civil action. Nothing in this section shall prevent a judge from ordering restitution for any damage caused by a driver involved in an accident provided for in this section. (Emphasis added).

Title 47 O.S. 2011, §10-104 provides in pertinent part:

A. The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his correct name, address and registration number of the vehicle he is driving, and shall upon request exhibit his driver license and his security verification form, as defined in Section 7-600 of this title, to the person struck or the driver or occupant of or person attending any vehicle collided with, and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person. Any driver who provides information required by this section which is intentionally inaccurate shall be subject to the provisions of Section 10-103 of this title. (Emphasis added).

¶7 Mr. Watkins asserts 47 O.S. 2011, § 10-102[2] (accidents involving nonfatal injuries) is the only statute applicable to the present case. This section does not provide for treble damages. In fact, the only statute that allows for an award of treble damages is 47 O.S. 2011, § 10-103, which Mr. Watkins argues applies when the hit-and-run accident results only in vehicle damage; here there was both vehicle damage and bodily injury and therefore he asserts 47 O.S. 2011, § 10-103 is not applicable. He believes the first sentence of 47 O.S. 2011, § 10-103 limits the kind of victims of hit-and-run drivers who may recover treble damages to those who only have vehicle damage and no bodily injuries.

¶8 Mr. McIntosh argues the word "only" in the first sentence of 47 O.S. 2011, § 10-103 creates ambiguity and under his interpretation the legislative intent was to place a limit on the type of treble damages (vehicle damage instead of damage related to a bodily injury) and not a limit on who can recover as long as the victim sustained vehicle damage in a vehicle he or she occupied. He also asserts Mr. Watkins pled no contest to violating 47 O.S. 2011, §10-103 and is currently on misdemeanor probation for that crime. All the elements in the statute have been met for treble damages. Therefore, under the plain language of the statute, Mr. McIntosh argues he is entitled to treble damages based upon the damage to his vehicle.

¶9 Title 47 O.S. 2011, §10-103 is susceptible to more than one reasonable interpretation and is therefore ambiguous and requires this Court to resort to rules of statutory construction to determine its intent. In determining legislative intent, we shall give the statute a reasonable and sensible construction that will avoid absurd consequences if the language fairly permits. Here, the statutory language, its history, and the act as a whole, allows for a reasonable and sensible construction.

¶10 In 1949, Senate Bill 3 was enacted and Section 2 of the bill was the precursor to 47 O.S. §§ 10-102, 10-102.1, 10-103, 10-104 and 10-105. 1949 Okla. Sess. Laws, p. 502, § 2. Section 2 of the bill was codified in Section 121.2 of Title 47 of the Oklahoma Statutes. This section provided:

(a) The driver of any vehicle involved in an accident resulting in injury to, or death of, any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until he has fulfilled the requirements of paragraph (d). Every such stop shall be made without obstructing traffic more than is necessary.

(b) Any person wilfully, maliciously, or feloniously failing to stop, or to comply with said requirements under such circumstances, shall be guilty of a felony, upon conviction thereof, be punished by imprisonment for not less than ten (10) days nor more than one (1) year, and by a fine of not less than fifty dollars ($50.00) nor more than one thousand dollars ($1,000.00) or by both such fine and imprisonment.

(c) The driver of any vehicle involved in an accident resulting only in damage to a vehicle, which is driven or attended by any person, shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible, and shall forthwith return to, and in every event shall remain at the scene of such accident, until he has fulfilled the requirements of paragraph (d). Every such stop shall be made without obstructing traffic more than is necessary.

(d) The driver of any vehicle involved in an accident shall give his correct name and address, and the registration number of the vehicle he is driving; and shall exhibit his operator's or chauffeur's license to the person struck, or the driver, or occupant of, or person attending any vehicle collided with and shall render to any person injured in such accident reasonable assistance. If the driver does not have an operator's or chauffeur's license in his possession he shall exhibit other valid evidence of identification to the occupants of a vehicle, or to the person collided with.

(e) The driver of any vehicle which collides with any vehicle which is unattended shall immediately stop, and shall then and there either locate and notify the operator or owner of such vehicle of the correct name and address of the driver and the owner of the vehicle striking the unattended vehicle, or shall leave in a conspicuous place in or on the vehicle struck a written notice giving the correct name and address of the driver and of the owner of the vehicle doing the striking, and shall provide the same information to an officer having jurisdiction.

(f) The driver of any vehicle involved in an accident resulting in damages to fixtures legally upon or adjacent to a highway shall take reasonable steps to locate and notify the owner or person in charge of such property, of such fact, and of his name and address, and of the registration number of the vehicle he is driving, and shall exhibit his operator's or chauffeurs license, or if said operator's or chauffeur's license is not in his possession at that time, said driver shall exhibit other valid evidence of identification, and shall make report of such accident when and as required by law.

(g) The driver of a vehicle involved in an accident resulting in injury to or death of any person shall immediately, by the quickest means of communication, give notice of such accident to the local police department, if such accident occurs within a municipality, or to the office of the county sheriff or the nearest office of the State Highway Patrol, after complying with the requirements of paragraph (d).

Provided the provisions of this Section shall not apply to any person who is himself injured in such accident to the extent that he cannot safely and reasonably comply therewith.

It shall be deemed a misdemeanor and punishable by fine of not more than fifty dollars ($50.00) for the conviction of any person for failure to comply with the requirements of paragraphs (c), (e), (f) or (g).

The bill's title referred to this section as "establishing the requirements for drivers involved in an accident." Subsections (a) & (b) of § 121.2 provided a driver who causes an accident where there is a nonfatal injury shall stop and provide the information and assistance required in subsection (d) or they shall be guilty of a felony. Subsection (c) & (g) provided a driver who causes an accident where there is "only" vehicle damage shall stop and provide the information required in subsection (d), no assistance is required because there are no injuries, and a person who fails to do so shall be guilty of a misdemeanor. The purpose of § 121.2 was to provide requirements for drivers involved in accidents. It provided different duties based upon the type of accident as well as providing different criminal degrees of guilt for failure to provide information and/or assistance when necessary. The use of the word "only" in subsection (c) clearly limited the criminal charges to a misdemeanor if an accident only involved vehicle damage. At this time, there existed no provision for treble damages like those currently found in 47 O.S. 2011, §10-103.

¶11 In 1961, House Bill 556 created the Highway Safety Code for the State of Oklahoma. 1961 Okla. Sess. Laws, p. 315. This bill re-codified many statutes relating to public safety and created 47 O.S. §§ 10-102, 10-102.1, 10-103, 10-104 and 10-105 in a new chapter, "Chapter 10. Accidents And Accident Reports." Title 47 O.S. 1961, § 10-103 provided:

The driver of any vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of such accident until he has fulfilled the requirements of section 10-104. Every such stop shall be made without obstructing traffic more than is necessary. Any person failing to stop or comply with said requirements under such circumstances shall be guilty of a misdemeanor.

The bill titled this section "Accidents Involving Damage to Vehicle." The re-codification left the pertinent language, formerly found in subsections (c) and (g) of § 121.2, relatively intact. The focus remained on establishing the duties of a driver who collides with an attended vehicle. It provided such person who fails to perform those duties will be guilty of a misdemeanor where there was only vehicle damage. The apparent purpose of the "accident resulting only in damage to a vehicle" language was to limit the degree of crime to a misdemeanor and to distinguish this crime from the felony crimes for hit-and-run accidents causing a nonfatal injury or death.

¶12 Title 47 O.S. 1961, § 10-103 has only been amended once since its enactment. HB 1458 (1987) amended § 10-103 to add a specific punishment provision, to provide the current scheme for treble damages and to authorize a court to order restitution. 1987 Okla. Sess. Laws, c. 224, § 15. The amendment is current law and provided in part, "[i]n addition to the criminal penalties imposed by this section, any person violating the provisions of this section shall be subject to liability for damages in the amount equal to three times the value of the damage caused by the accident." No other section in Chapter 10 provides treble damages.

¶13 Title 47 O.S. 2011, § 10-102[3] and § 10-102.1[4] provide the duties and penalties for drivers involved in nonfatal and fatal accidents, respectively. Both require the driver to stop and produce information as well as provide necessary assistance pursuant to 47 O.S. 2011, § 10-104. Willfully, maliciously or feloniously failing to perform such duties, upon conviction, constitutes a felony. Neither section requires a collision with another vehicle or mentions vehicle damage. Title 47 O.S. 2011, § 10-105[5] provides duties for drivers who collide with an unattended vehicle. This section contains no criminal penalties for failure to comply with these duties nor does it provide for any damages in a civil action.

¶14 The purpose behind Chapter 10 is to provide a procedural framework for those involved in an accident and to provide criminal penalties for drivers who leave the scene of an accident without performing the duties required by 47 O.S. 2011, § 10-104. The degree of crime for a violation of those duties depends on the type of damage/injury incurred. A driver who collides with an attended vehicle and leaves the scene without complying with § 10-104 shall be guilty of a misdemeanor if there was only vehicle damage. If a driver causes injury or death and does not provide the required information and/or assistance they will, upon conviction, be guilty of a felony regardless if he or she hit another vehicle. In addition, if there is vehicle damage, the driver will be subject to treble damages in a civil action based upon the damage to the vehicle. The civil action is a separate cause of action provided under 47 O.S. 2011, § 10-103.

¶15 Our interpretation of the relevant sections of Chapter 10 harmonizes those sections and avoids an absurd result. The limiting language in 47 O.S. 2011, § 10-103, "accident resulting only in damage to a vehicle," has historically been used to distinguish the degree of crime, i.e., a misdemeanor when there is only vehicle damage rather than a felony when a nonfatal injury or death occurs. The later enacted treble damages provision is available when there is an accident involving damage to an attended vehicle and the driver causing the accident does not comply with 47 O.S. 2011, § 10-104. The obvious public policy behind the treble damages provision is to provide an added level of deterrence against hit-and-run drivers who damage attended vehicles. The term "nonfatal injury" is also not defined in Chapter 10. This deterrence would ring hollow if a victim was prevented from bringing a civil action for treble damages just because they also suffered an injury, no matter how minor the injury. Our interpretation avoids the absurd result of barring an award of treble damages for a hit-and-run accident involving an attended vehicle when the victim was also injured. We do not believe the legislative intent behind the later enacted treble damages provision was to limit this provision to accidents where there are no injuries.

IV. CONCLUSION

¶16 When a driver collides with an attended vehicle and fails to perform the duties required under 47 O.S. 2011, § 10-104, that driver, in a civil action, shall be liable for treble damages based upon the damage sustained to the vehicle. This is in addition to any criminal penalties which may be imposed upon such driver. This interpretation maintains the public policy behind 47 O.S. 2011, § 10-103 and avoids an absurd result. The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION

¶17 Gurich, C.J., Edmondson, Colbert, Reif, Combs, JJ., concur.

¶18 Wyrick, V.C.J., dissents (writing separately), Kauger, Winchester, Darby, JJ., dissent.

FOOTNOTES

[1] Anthony McIntosh dismissed any and all causes of action with prejudice against the defendants on August 1, 2018. The plaintiffs' amended petition added Watkins Heating & Air Conditioning, Inc. as a defendant because the defendant, Watkins, was driving a company vehicle when the collision occurred. Lee McIntosh dismissed any and all causes of action with prejudice against Watkins Heating & Air Conditioning on August 1, 2018. The remaining parties are Lee McIntosh, plaintiff/appellant and Jake Watkins, defendant/appellee.

[2] 47 O.S. 2011, § 10-102:

A. The driver of any vehicle involved in an accident resulting in a nonfatal injury to any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 10-104 of this title. Every such stop shall be made without obstructing traffic more than is necessary.

B. Any person willfully, maliciously, or feloniously failing to stop to avoid detection or prosecution or to comply with said requirements under such circumstances, shall upon conviction be guilty of a felony punishable by imprisonment for not less than ten (10) days nor more than two (2) years, or by a fine of not less than Fifty Dollars ($50.00) nor more than One Thousand Dollars ($1,000.00), or by both such fine and imprisonment.

C. The Commissioner of Public Safety shall revoke the license or permit to drive and any nonresident operating privilege of the person so convicted.

[3] See supra note 2.

[4] 47 O.S. 2011, § 10-102.1:

A. The driver of any vehicle involved in an accident resulting in the death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 10-104 of this title. Every such stop shall be made without obstructing traffic more than is necessary.

B. Any person willfully, maliciously, or feloniously failing to stop to avoid detection or prosecution, or to comply with said requirements under such circumstances, shall upon conviction be guilty of a felony punishable by imprisonment for not less than one (1) year nor more than ten (10) years, or by a fine of not less than One Thousand Dollars ($1,000.00) nor more than Ten Thousand Dollars ($10,000.00), or by both such fine and imprisonment.

C. The Commissioner of Public Safety shall revoke the license or permit to drive and any nonresident operating privilege of the person so convicted.

[5] 47 O.S. 2011, §10-105:

The driver of any vehicle which collides with any vehicle which is unattended shall immediately stop and shall then and there either locate and notify the operator or owner of such vehicle of the correct name and address of the driver and owner of the vehicle striking the unattended vehicle, and provide said operator or owner with information from his security verification form, as defined by Section 47-7-600 of this title, or shall leave in a conspicuous place in the vehicle struck a written notice giving the name and address of the driver and of the owner of the vehicle doing the striking, and providing information from his security verification form, as defined by Section 47-7-600 of this title, and a statement of the circumstances thereof.

 

 

Wyrick, V.C.J., with whom Winchester, J., joins, dissenting:

¶1 Section 10-103 is not ambiguous. It plainly says that treble damages may be sought against "any person violating the provisions of this section."[1] It says nothing about violations of other sections, and those other sections say nothing about treble damages. The only relevant question is thus whether Jake Watkins violated section 10-103.

¶2 The majority never answers that question.[2] It instead assumes that Watkins violated a different section, but concludes that despite what the Legislature said, it actually meant that the treble-damages provision applies to "any person violating the provisions of this section or any other section."

¶3 The majority arrives at this counter-textual conclusion by employing an all-too-familiar interpretive device: when a statute doesn't say what the Court thinks it ought to say, it declares the statute ambiguous and then, under the guise of ascertaining "legislative intent," resolves the so-called ambiguity by assigning to the statute whatever meaning aligns with the Court's policy preferences.[3]

¶4 This isn't the interpretation of a statute; it's the drafting and codifying of a statute. This conflation of judicial and legislative roles raises serious separation-of-powers concerns that ought to give us pause. I respectfully dissent, and write separately to urge the Court to abandon its atextual interpretive approach.

I.

¶5 The majority declares that "§10-103 is susceptible to more than one reasonable interpretation and is therefore ambiguous,"[4] but it never quite explains how this is so, other than to point to Mr. McIntosh's entirely unsubstantiated claim that the Legislature probably intended for treble damages to be available for all hit-and-run accidents. That claim, however, tells us nothing about the clarity of the text. It is instead made in an attempt to avoid the plain text, which is neither unclear nor susceptible to more than one meaning.

¶6 The first sentences of sections 10-102, 10-102.1, and 10-103 describe the sort of accident to which each section applies. Section 10-102 applies to "accident[s] resulting in a nonfatal injury to any person."[5] Section 10-102.1 applies to "accident[s] resulting in the death of any person."[6] Section 10-103 applies to "accident[s] resulting only in damage to a vehicle which is driven or attended by any person."[7]

¶7 Each section then imposes certain duties upon a driver involved in such an accident and describes the criminal penalties available for failure to comply with those duties. Violators of section 10-103 can be charged with a misdemeanor, while violators of sections 10-102 and 10-102.1 can be charged with a felony.[8]

¶8 Section 10-103 then contains a civil remedy provision that the other two sections lack: "In addition to the criminal penalties imposed by this section, any person violating the provisions of this section shall be subject to liability for damages in an amount equal to three times the value of the damage caused by the accident. Said damages shall be recoverable in a civil action."[9] The Legislature was quite clear with the words they chose for this treble-damages provision. It applies to "any person violating the provisions of this section," and as explained above, "this section" is the section that applies to accidents "resulting only in damage to a vehicle,"[10] as opposed to accidents resulting in only personal injury or resulting in both damage to a vehicle and personal injury.[11] The Legislature's decision to omit this treble-damages provision from the sections governing accidents resulting in personal injury leaves no doubt that the Legislature intended it to apply only to violations of section 10-103.

¶9 Again, the majority never explains how this text is reasonably susceptible to more than one interpretation, nor can I imagine any reasonable way to read "this section" as actually saying "this section or any other section."[12] The majority offers a recitation of the statute's history, but everything about that history undermines, rather than strengthens, the majority's claim of ambiguity. It is true that the relevant sections of law were once combined into a single section of law that the Legislature later split into separate sections, each governing a particular type of accident--i.e., accidents "resulting only in damage to a vehicle which is driven or attended by any person" (section 10-103), accidents "resulting in a nonfatal injury" (section 10-102), and accidents "resulting in the death of any person" (section 10-102.1). The fact, however, that the Legislature added the treble damages after splitting the sections apart, and added the treble damages to only one section while specifying that it applied to that section only, is slam-dunk evidence that the Legislature intended treble damages to be available exclusively for violations of section 10-103.

¶10 Because section 10-103 is not ambiguous, our duty is to put aside any concerns we may have with the policy articulated by the text and to apply the statute precisely as drafted and enacted by the Legislature and as approved by the Governor.[13] If the Legislature wishes to rethink its treble-damages policy, it can do so through the procedures for making new law that are mandated by our Constitution.

II.

¶11 The majority next seeks to avoid the plain meaning of section 10-103 by declaring that the plain meaning is "absurd," a finding that the majority believes goes hand in hand with its finding of ambiguity. But it should go without saying that the text of a statute cannot simultaneously be ambiguous and absurd. An ambiguous statute, after all, is one that is susceptible to more than one reasonable meaning.[14] If a statute can be read one way that is quite reasonable, but another way that is quite absurd, then by definition it is not ambiguous. That is why the absurdity canon "should not be confused with a useful technique for resolving ambiguities in statutory language" because it "properly 'applies to unambiguous statutes.'"[15]

¶12 Even when applicable, the absurdity canon provides a very narrow exception to our duty to apply the plain meaning of a statute, "where the result of applying the plain language would be, in a genuine sense, absurd, i.e., where it is quite impossible that [the Legislature] could have intended the result"[16]--conditions that are not met here. As Chief Justice John Marshall explained almost two centuries ago, "if, in any case, the plain meaning of a provision, . . . is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application."[17]

¶13 The absurdity canon is thus an escape hatch to be opened only in the rarest of cases where the text leads to "'patently absurd consequences' that [the Legislature] could not possibly have intended,"[18] rather than in cases where the Court merely thinks a policy embodied in a statute is unwise. An oft-cited example of a statute that would fit the bill is one that provides that the "winning party" rather than the "losing party" must pay the other side's reasonable attorney's fees.[19] As the Tenth Circuit has put it, in such a case:

the error in the statute is so "unthinkable" that any reasonable reader would know immediately both (1) that it contains a "technical or ministerial" mistake, and (2) the correct meaning of the text. When these demanding conditions are met, a court may invoke the [absurdity] doctrine to enforce the statute's plain meaning, much as it might in cases where a modifier is misplaced or the grammar otherwise mangled but the meaning plain to any reasonable reader. Cabined in this way, the absurdity doctrine seeks to serve a "linguistic rather than substantive" function, and does not depend nearly as much on doubtful claims about legislative intentions, risk nearly as much interference with the separation of powers, or pose anything like the same sort of fair notice problems as its more virulent cousin. Instead, it aims only to enforce a meaning reasonable parties would have thought plain all along.[20]

¶14 Nothing about this case fits that bill. As its basis for declaring absurdity, the majority merely concludes that it makes sense to have treble damages available in all cases and that, as such, the Legislature could not possibly have intended to enact a statute that did anything else:

The obvious public policy behind the treble damages provision is to provide an added level of deterrence against hit-and-run drivers who damage attended vehicles. . . . This deterrence would ring hollow if a victim was prevented from bringing a civil action for treble damages just because they also suffered an injury, no matter how minor the injury. Our interpretation avoids the absurd result of barring an award of treble damages for a hit-and-run accident involving an attended vehicle when the victim was also injured. We do not believe the legislative intent behind the later enacted treble damages provision was to limit this provision to accidents where there are no injuries.[21]

Not only is this conclusion not remotely sufficient as a basis for invoking the absurdity canon, it is also incorrect. The treble damages provision may well provide a theoretical level of deterrence to hit-and-run drivers who damage attended vehicles, and that may well be why the Legislature added the provision. But it is not true that deterrence would ring hollow if treble damages were not permitted in personal injury cases. First, the deterrent effect in property damage cases is not diminished by the unavailability of treble damages in other cases. Second, whatever deterrent effect that exists likely carries over to those other cases because a fleeing hit-and-run driver cannot know for certain whether anyone was injured. So in the world imagined by the majority where potential hit-and-run drivers are actually aware of the treble-damages provision such that it might deter them from fleeing, a rational driver would have to assume that he will be subject to treble damages until he knows for certain that he will not be. And the only way to know that is to stop, rather than run.

¶15 Nor is it true there is no rational explanation for omitting the treble-damages provision from the personal-injury sections. It is certainly possible that the Legislature declined to add the treble-damages provision to the personal-injury-accident sections because more than adequate financial deterrents are available in the personal-injury context, where the negligent driver can be sued for non-economic and punitive damages. So the deterrence wouldn't "ring hollow" in the personal injury context if treble property damages were unavailable, but rather would flow from other civil remedies that are available to the injured party.

¶16 In sum, because the majority believes that section 10-103 is ambiguous, the absurdity canon has no place in this case. But even if it did, the majority simply disagrees with the policy choice embodied by the plain language of section 10-103, and that sort of disagreement does not come close to triggering the absurdity canon.

III.

¶17 These misapplications of the ambiguity and absurdity doctrines are symptomatic of an atextual interpretive approach that repeatedly rears its head in cases where the plain meaning of a statute strikes a majority of this Court as unwise. I fear that this atextual approach invites criticism that the Court has lost its way as an institution devoted to merely saying what the law is, rather than what it ought to be.

¶18 No doubt, the Court sometimes properly emphasizes that determining the meaning of a statute "begins with the text of the statute and--absent unresolvable ambiguity--ends with the text" and that its job "is to determine the ordinary meaning of the words that the Legislature chose in the provisions of law at issue."[22] But in cases where the plain meaning of the text leads to a result the Court does not like, the Court changes the question from "What did the Legislature enact?" to "What did the Legislature intend?"[23]--a shift in interpretive approach that opens the door to the Court injecting its policy preferences under the guise of ascertaining the Legislature's intent.

¶19 The hodgepodge interpretive standard invoked by the majority demonstrates how this is so. The majority first declares that "the primary goal of statutory construction is to ascertain and to apply the intent of the Legislature that enacted the statute,"[24] thus shifting the inquiry away from ascertaining what law the Legislature actually enacted, in favor of ascertaining what law the Legislature intended to require. This might be less problematic if the Court simply undertook to cold-bloodedly ascertain the Legislature's intent, letting the chips fall where they may. But that is not what the Court does. It instead seeks to ascertain an intent that is "reasonable and sensible" (or not "absurd"),[25] which transforms the inquiry away from determining the Legislature's intent and toward determining what the Court would have intended were it the lawmaker.[26] And because the majority views the text of the statute as merely one of many pieces of evidence--and a piece that can seemingly be discarded altogether once a declaration of ambiguity is made--the Court finds itself entirely unconstrained in assigning to the Legislature the intent of its choosing.[27]

¶20 None of this would be possible if the Court properly focused on the text. The text is what was read aloud and debated on the legislative floor, approved by majority vote, and sent to the Governor for executive approval, all per the "single, finely wrought and exhaustively considered, procedure" our Constitution commands.[28] The text of the statute isn't mere evidence of what the law is, it is the law, and it is the sole legitimate expression of the Legislature's intent. If the law is not the words that the Legislature enacted, but rather whatever intent resided in the minds of this legislator or that, then we need not bother with statute books because the law resides elsewhere, perhaps up in the clouds where if only we stare long enough we will see the law we want to see. But fundamental to due process is notice of what the law is. Our citizens must know where to look to find the law, and they should be able to expect that the law means what it plainly says. A system of laws that requires our citizens to read the minds of legislators (or judges) in order to know the law is a system of laws that is fundamentally incompatible with American notions of fair play and substantial justice.

¶21 Today's decision is a three-card-monte-like application of ambiguity, absurdity, and intentionalism to reach a result that was fully baked: treble damages for everyone. What this case demonstrates is that it is all too easy to craft perfectly logical and sound policies from the isolation of judicial chambers. Legislators, however, labor in protester-filled hallways, lobbyist-filled offices, and legislator-filled chamber floors, where "often and by design it is 'hard-fought compromise[ ],' not cold logic, that supplies the solvent needed for a bill to survive the legislative process."[29] As such, "[i]f courts felt free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal, we would risk failing to 'tak[e] . . . account of' legislative compromises essential to a law's passage and, in that way, thwart rather than honor 'the effectuation of [legislative] intent.'"[30] Today's majority has done just that.

* * *

¶22 For these reasons, I respectfully dissent.

FOOTNOTES

[1] 47 O.S.2011 § 10-103 (emphasis added).

[2] The question is a difficult one, but for purposes of this civil action, Watkins probably did not violate section 10-103. This seems unusual, given that in his criminal case Watkins was convicted of violating section 10-103 pursuant to his plea of no contest. Watkins, however, is not precluded from litigating the issue in this subsequent civil suit because section 513 of Oklahoma's Code of Criminal Procedure directs that nolo contendere ("no-contest") pleas "not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." 22 O.S.2011 § 513. Because he is free to do so, Watkins now argues that section 10-103 is not violated when an accident involves personal injury because section 10-103 governs only "accident[s] resulting only in damage to a vehicle." In Watkins's view, his accident didn't involve "only" damage to a vehicle; therefore he cannot have violated section 10-103. This is correct. Section 10-103 is a separate and distinct offense from the offenses found in sections 102 and 102.1. The State of Oklahoma has previously argued as much with respect to this offense, see Palmer v. State, 1958 OK CR 70, ¶ 8, 327 P.2d 722, 725. All of these provisions are part of a model statute adopted in identical or near identical form by many other states. See Unif. Vehicle Code §§ 10-102 to 10-103 (Nat'l Comm. on Unif. Traffic Laws & Ordinances 1956). The only case I was able to find construing a similar statute in another state concluded that the misdemeanor offense is not a lesser included offense of the felony offense, but rather a separate and distinct offense. State v. Sakoda, 618 P.2d 1148, 1149 (Haw. Ct. App. 1980) (construing sections 291C-13 and -14 of the Hawai'i Revised Statutes and overturning the appellant's conviction under the law governing "an accident resulting only in damage to a vehicle or other property which is driven or attended by any person" because the accident at issue involved personal injury); cf. Peterson v. State, 775 So. 2d 376, 377--78 (Fla. Dist. Ct. App. 2000) (construing sections 316.027 and 316.061 of the Florida Statutes and reversing the appellant's conviction under the statute governing a "crash resulting only in damage to a vehicle or other property" because the verdict was inconsistent insofar as it also convicted him of violating the statute governing a "crash resulting in injury of any person"). Thus, if Watkins is correct--as all parties seem to agree--that his accident involved personal injury, he cannot as a matter of law have violated section 10-103.

[3] See, e.g., CompSource Mut. Ins. Co. v. State ex rel. Okla. Tax Comm'n, 2018 OK 54, --- P.3d --- (creating an ambiguity by injecting the notion of specific versus general references, and then reaching the desired policy goal of tax rebates that the unambiguous text would not have permitted); In re T.H., 2015 OK 26, ¶¶ 9, 11, 348 P.3d 1089, 1092 (finding a statute ambiguous and then "liberally constru[ing]" the provision "to carry out its purpose" (quoting In re BTW, 2010 OK 69, ¶ 13, 241 P.3d 199, 205)); Wilhoit v. State, 2009 OK 83, ¶¶ 10--13, 226 P.3d 682, 685--86 (largely the same, concluding that a statute was ambiguous, leading the Court to "ascertain . . . the legislative intent and the public policy" to ascertain meaning); In re J.L.M., 2005 OK 15, ¶¶ 7, 9--10, 109 P.3d 336, 338--40 (finding a statute ambiguous in order to look at "public policy enunciated" in other jurisdictions as a basis for a finding of "legislative intent"); Estes v. ConocoPhillips Co., 2008 OK 21, ¶¶ 15--25, 184 P.3d 518, 525--27 (answering for the first time a certified federal question about whether the Standards for Workplace Drug and Alcohol Testing Act, 40 O.S. §§ 551--565, would equate breathalyzer tests with "laboratory services" for which an employer must use a licensed testing facility before taking disciplinary action against an employee, and then answering the question of whether the employer's failure to use a licensed facility was "willful" in the affirmative by deeming the relevant statute ambiguous and maligning any other result as "absurd"); Cox v. Dawson, 1996 OK 11, ¶¶ 7, 20, 911 P.2d 272, 277, 281 (concluding that a statute was "ambiguous because of what it does not say" and then supplying the statutory provision that the Court thought was needed); Maule v. Indep. Sch. Dist. No. 9, 1985 OK 110, ¶¶ 10--11, 714 P.2d 198, 202--03 (explaining that because the parties argued the statute is ambiguous the Court was free to find the result that was "fair and efficacious" because "inept or incorrect choice of words in a statute will not be construed and applied in a manner which would destroy the . . . purpose of the statute").

[4] Majority Op. ¶ 9.

[5] 47 O.S.2011 § 10-102(A).

[6] Id. § 10-102.1(A).

[7] Id. § 10-103.

[8] Id. §§ 10-102(B), 10-102.1(B), 10-103.

[9] Id. § 10-103 (emphasis added).

[10] Id. (emphasis added).

[11] See id. §§ 10-102 to 10-102.1.

[12] Majority Op. ¶ 15 (concluding that the "accident resulting only in damage to a vehicle" language only limits the type of crime that is charged, and therefore the "treble damages provision is available when[ever] there is an accident involving damage to an attended vehicle and the driver causing the accident does not comply with 47 O.S. 2011, § 10-104," but failing to address how this can be so in light of the treble-damages provision's "violating the provision of this section" limiting language).

[13] Hall v. Galmor, 2018 OK 59, ¶ 45, 427 P.3d 1052, 1070 ("[D]etermin[ing] the meaning of [a statute] . . . . begins with the text of the statute and--absent unresolvable ambiguity--ends with the text."); Broadway Clinic v. Liberty Mut. Ins. Co., 2006 OK 29, ¶ 15, 139 P.3d 873, 877 ("In the absence of ambiguity or conflict with another enactment, our task is limited to applying a statute according to the plain meaning of the words chosen by the legislature . . . .").

[14] Odom v. Penske Truck Leasing Co., 2018 OK 23, ¶ 18, 415 P.3d 521, 528 ("The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation." (emphasis added) (citing Am. Airlines, Inc. v. State ex rel. Okla. Tax Comm'n, 2014 OK 95, ¶ 33, 341 P.3d 56, 64; YDF, Inc. v. Schlumar, Inc., 2006 OK 32, ¶ 6, 136 P.3d 656, 658; In re J.L.M., 2005 OK 15, ¶ 5, 109 P.3d 336, 338)).

[15] In re Taylor, 899 F.3d 1126, 1131 n.2 (10th Cir. 2018) (emphasis added) (quoting United States v. Husted, 545 F.3d 1240, 1245 (10th Cir. 2008); Robbins v. Chronister, 435 F.3d 1238, 1241 (10th Cir. 2006) (en banc)).

[16] Small v. United States, 544 U.S. 385, 404 (2005) (Thomas, J., dissenting) (citations omitted); see also Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 565 (2005) (noting that an omission that may be deemed an "unintentional drafting gap" may seem odd, but that does not equate to the result being absurd); Carter v. United States, 530 U.S. 255, 263 (2000) (noting just because the interpretation results in an anomaly, that does not mean it is an absurdity which justifies statute modification); In re Taylor, 737 F.3d 670, 681 (10th Cir. 2013) ("The absurdity doctrine applies 'in only the most extreme of circumstances,' when an interpretation of a statute 'leads to results so gross as to shock the general moral or common sense,' which is a 'formidable hurdle' to the application of this doctrine. It is not enough to show that Congress intended a different result from the one produced by the plain language of the statute." (citations omitted)).

[17] Sturges v. Crowninshield, 17 U.S. (4 Wheat.) 122, 202--03 (1819). This understanding of the doctrine has prevailed in subsequent centuries. In its 1930 decision in Crooks v. Harrelson, for example, the United States Supreme Court again emphasized the narrow parameters of the doctrine:

[T]he principle is to be applied to override the literal terms of a statute only under rare and exceptional circumstances. . . . [T]o justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense. . . .

. . . It is not enough merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention, when put to the test, frequently, and to the surprise of the lawmaker himself, turn out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the lawmaking authority, and not with the courts.

282 U.S. 55, 60 (1930) (citations omitted).

[18] FBI v. Abramson, 456 U.S. 615, 640 (1982) (O'Connor, J., dissenting) (quoting United States v. Brown, 333 U.S. 18, 27 (1948)).

[19] Lexington Ins. Co. v. Precision Drilling Co., 830 F.3d 1219, 1223 (10th Cir. 2016) (Gorsuch, J.) (citing Antonin Scalia & Bryan A. Garner, Reading Law 237--38 (2012)).

[20] Id. (citations omitted).

[21] Majority Op. ¶ 15.

[22] Hall, 2018 OK 59, ¶ 45, 427 P.3d at 1070.

[23] This method of statutory interpretation is known as intentionalism. An intentionalist seeks to ascertain what the Legislature intended the law to be and views the text as only one of many indicators of legislative intent, while a textualist seeks to understand the plain meaning of the text the Legislature enacted and views that text as the only valid and reliable expression of the Legislature's intent. Because of its many flaws, intentionalism has fallen out of favor in most serious legal circles. See Justice Elena Kagan, The Scalia Lecture: A Dialogue with Justice Kagan on the Reading of Statutes at 8:28 (Nov. 17, 2015), http://today.law.harvard.edu/in-scalia-lecture-kagan-discusses-statutory-interpretation/ ("[W]e're all textualists now . . . ."); Jonathan T. Molot, The Rise and Fall of Textualism, 106 Colum. L. Rev. 1, 43 (2006) ("Textualism seems to have been so successful--indeed, far more successful than its defenders or detractors care to admit--that we are all textualists in an important sense."); Marjorie O. Rendell, 2003--A Year of Discovery: Cybergenics and Plain Meaning in Bankruptcy Cases, 49 Vill. L. Rev. 887, 887 (2004) ("W[e] are all textualists now."); William N. Eskridge, Jr., All About Words: Early Understandings of the "Judicial Power" in Statutory Interpretation, 1776--1806, 101 Colum. L. Rev. 990, 1090 (2001) ("[S]tatutory text (including the whole statute and related provisions) ought to be the primary source of statutory meaning. This was the English practice in the eighteenth century, the early state practice, the assumption of the Framers as well as both the defenders and opponents of the Constitution during ratification, and was the accepted view of federal judges implementing the constitutional design. But this proposition needs little defense today. We are all textualists."); Jonathan R. Siegel, Textualism and Contextualism in Administrative Law, 78 B.U. L. Rev. 1023, 1057 (1998) ("In a significant sense, we are all textualists now.").

[24] Majority Op. ¶ 4.

[25] Id.

[26] What if both the text and whatever other sources the Court consults lead it to conclude that the Legislature intended something that the Court thinks is entirely unreasonable? Does the Court really think that it possesses the power to disregard both the text and legislative intent in favor of whatever policy it thinks is sensible?

[27] Majority Op. ¶ 4 (explaining that the "general purpose and objectives" of the act, among other things, provide evidence of what the law is). See generally, e.g., Johnson v. City of Woodward, 2001 OK 85, ¶ 6, 38 P.3d 218, 222 ("The best evidence of legislative intent is the statutory language itself." (emphasis added) (quoting Upton v. State Dep't of Corr., 2000 OK 46, ¶ 6, 9 P.3d 84, 86)). The significance of this minimization of the text should not be lost. The majority does so to free itself from the constraints imposed by the text--text that plainly forecloses the result the majority desires--and to allow itself to divine a legislative intent that unfailingly aligns with the Court's view of what is the most "reasonable and sensible" policy for our State.

[28] I.N.S. v. Chadha, 462 U.S. 919, 951 (1983) (describing the federal constitution's analogous procedures). See generally Okla. Const. art. V, § 34 ("Every bill shall be read on three different days in each House, and no bill shall become a law unless, on its final passage, it be read at length, and no law shall be passed unless upon a vote of a majority of all the members elected to each House in favor of such law; and the question, upon final passage, shall be taken upon its last reading, and the yeas and nays shall be entered upon the journal."); id. art. VI, § 11 ("Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature, shall, before it becomes a law, be presented to the Governor; if he approve, he shall sign it . . . .").

[29] New Prime Inc. v. Oliveira, 139 S. Ct. 532, 543 (2019) (alteration in original) (quoting Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 374 (1986)).

[30] Id. (second alteration & ellipsis in original) (quoting Dimension Fin. Corp., 474 U.S. at 374).

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1958 OK CR 70, 327 P.2d 722, PALMER v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 117, 764 P.2d 172, 59 OBJ 2936, Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n
Discussed
 1992 OK 88, 834 P.2d 439, 63 OBJ 1834, Naylor v. Petuskey
Discussed at Length
 1993 OK 117, 860 P.2d 230, 64 OBJ 2882, Brown v. Oklahoma State Bank & Trust Co. of Vinita
Discussed
 2001 OK 71, 33 P.3d 302, 72 OBJ 2703, SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed
 2001 OK 85, 38 P.3d 218, 72 OBJ 2934, JOHNSON v. CITY OF WOODWARD
Discussed
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSON
Discussed
 2003 OK 96, 81 P.3d 652, FULSOM v. FULSOM
Discussed
 2005 OK 15, 109 P.3d 336, IN THE MATTER OF J.L.M.
Discussed at Length
 1996 OK 11, 911 P.2d 272, 67 OBJ 542, Cox v. Dawson
Discussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed
 2006 OK 32, 136 P.3d 656, YDF, INC. v. SCHLUMAR, INC.
Discussed at Length
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed at Length
 2007 OK 81, 173 P.3d 64, WYLIE v. CHESSER
Discussed
 2008 OK 21, 184 P.3d 518, ESTES v. CONOCOPHILLIPS CO.
Discussed
 2009 OK 83, 226 P.3d 682, WILHOIT v. STATE
Discussed
 2010 OK 69, 241 P.3d 199, IN THE MATTER OF BTW
Discussed
 2014 OK 95, 341 P.3d 56, AMERICAN AIRLINES, INC. v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed
 2015 OK 26, 348 P.3d 1089, IN THE MATTER OF T.H.
Discussed
 1980 OK 89, 612 P.2d 719, Independent School Dist. No. 89 of Oklahoma County v. Oklahoma City Federation of Teachers, Local 2309 of American Federation of Teachers
Discussed
 2016 OK 69, 376 P.3d 212, NELSON v. ENID MEDICAL ASSOCIATES, INC.
Discussed
 1980 OK 99, 613 P.2d 742, Udall v. Udall
Cited
 2018 OK 23, 415 P.3d 521, ODOM v. PENSKE TRUCK LEASING CO.
Discussed
 2018 OK 54, COMPSOURCE MUTUAL INSUR. CO. v. STATE ex rel. OKLA. TAX COMM. and OKLA. ASSOC. OF ELECTRIC SELF INSURERS FUND v. STATE OF OKLA. TAX COMM.
Cited
 2018 OK 59, 427 P.3d 1052, HALL v. GALMOR
Discussed
 2000 OK 46, 9 P.3d 84, 71 OBJ 1744, UPTON v. STATE ex. rel. OKLAHOMA DEPT. OF CORRECTIONS
Discussed
 1985 OK 110, 714 P.2d 198, 57 OBJ 22, Maule v. Independent School Dist. No. 9 of Tulsa County
Discussed
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 513, Pleas to Indictment or Information
Cited
Title 40. Labor
 Cite
Name
Level

 40 O.S. 551, Short Title
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 10-102, Accidents Resulting in Nonfatal Injury - Failure to Stop
Discussed at Length
 47 O.S. 10-103, Accidents Involving Damage to Vehicle
Discussed at Length
 47 O.S. 10-104, Duty to Give Information and Render Aid - Drug and Alcohol Testing
Discussed at Length
 47 O.S. 10-105, Duty Upon Striking Unattended Vehicle
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA